2023 IL App (4th) 210621

NO. 4-21-0621

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 9, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| SHAITAN L. COOK JR., | ) | No. 15CF1119 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

_____

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Cavanagh and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1　　　　Following a fully negotiated plea agreement, pursuant to which he pleaded guilty to a charge of nonfirearm first degree felony murder (720 ILCS 5/9-1(a)(3) (West 2014)), defendant Shaitan L. Cook Jr., was sentenced to 20 years in prison. Although he filed a motion to reconsider his sentence within 30 days of sentencing, defendant failed to file an accompanying notice of motion as required by section 5-4.5-50(d) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-50(d) (West 2020)). Thirteen months later, he filed a motion to withdraw his guilty plea, which was denied, and this appeal followed.

¶ 2　　　　The State urges us to dismiss this appeal for lack of jurisdiction based on defendant's noncompliance with section 5-4.5-50(d); specifically, the State argues that defendant's failure to file a notice of motion with the motion to reconsider rendered the postsentencing motions untimely. We disagree and conclude that jurisdiction exists.

1

¶ 3        Defendant raises various issues concerning ineffective assistance of counsel surrounding his negotiated guilty plea agreement and requests a remand pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), to further explore these issues. We conclude that no obligation to conduct a *Krankel* inquiry was triggered in this case and affirm the trial court's denial of defendant's motion to withdraw his guilty plea.

¶ 4                               I. BACKGROUND

¶ 5        Defendant was charged with multiple counts of first degree murder and attempted first degree murder arising out of his alleged participation as a 16-year-old accomplice in a robbery during which two people were shot, one of whom later died.

¶ 6                          A. Negotiated Plea Agreement

¶ 7        On February 24, 2020, on the eve of trial, defendant entered into a fully negotiated plea agreement, wherein he agreed to plead guilty to first degree felony murder (amended count IV of the information) in exchange for receiving the statutory minimum sentence of 20 years in prison. See 720 ILCS 5/9-1(a)(3) (2020). Defendant acknowledged that he understood his rights; he specifically stated that he understood he was giving up his rights to trial and to confront or cross-examine witnesses, and further that he was agreeing that the State could prove him guilty of the amended count beyond a reasonable doubt. He further acknowledged that no one forced him into the plea agreement and that his lawyer answered his questions.

¶ 8        At that time, the following factual basis was read into the record:

> "[O]n September 7, 2015, just after 9 o'clock, this defendant, Daiquan Cline, and Darion Evans, and Ryan O'Neal planned the robbery of Cesley Taylor. On the night of September 7, 2015, Ryan O'Neal was inside shooting dice with Cesley Taylor. Her girlfriend, Brittney Wilson, was in the back of the apartment.

2

Mr. O'Neal texted Daiquan Cline that they could come in, and Daiquan Cline, along with Darion Evans, who had a Spiderman mask and a .22 caliber handgun, this defendant, who had masked his face and had a BB gun, knocked on the door and entered the apartment. Darion Evans produced his gun. All the defendants took items from the apartment, whether it was money, a change purse, or a phone.

Darion Evans then *** fired a dangerous weapon repeatedly. Brittney Wilson was shot, but lived, and Cesley Taylor passed away that night in her apartment."

¶ 9        Following this factual recitation, the trial judge delivered admonishments pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001) to defendant, advising him of his appeal rights and applicable time frames.

¶ 10        The trial court entered its sentencing judgment on February 28, 2020.

¶ 11                                B. Motion to Reconsider Sentence

¶ 12        On March 3, 2020, defendant filed a *pro se* motion to reconsider his sentence. He argued that the sentence was excessive, his youth should have played a bigger role in consideration relating to his guilt and sentencing, and the evidence was insufficient to find him guilty by accountability. The *pro se* motion did not argue that the assistance provided by his counsel was ineffective, and he did not raise any specific *Krankel* argument. The motion was not, however, accompanied by a notice of motion as required by section 5-4.5-50 (730 ILCS 5/5-4.5-50 (West 2020)). It remained in the court file without any action being initiated for over one year, until he filed a *pro se* motion for trial transcripts and a motion to proceed *in forma pauperis* in June 2021. At that time, a public defender took note of the recent motion and her own office's prior

3

appointment in the case. She appeared at a status hearing and advised the trial court that the motion on transcripts "triggered" her to look at the earlier *pro se* motion to reduce sentence and that she would "potentially make amendments, such as changing it to a motion to withdraw a plea."

¶ 13                    C. Motion to Withdraw Guilty Plea

¶ 14        In August 2021, defendant's newly appointed counsel filed a motion to withdraw the guilty plea, asserting that (1) defendant's plea was "not knowingly, intelligently and voluntarily made"; (2) he "felt coerced into pleading guilty" after the trial court denied his motion to suppress his statements to the police; (3) he "felt coerced into entering an unfair plea agreement that he did not want to accept under circumstances where the evidence was insufficient to convict him on an accountability theory"; and (4) his sentence was "excessive, given his age, level of involvement, and the totality of the circumstances," and "his attorney, the Court, and the prosecutor would not agree to a more appropriate sentence under 20 years."

¶ 15        On his second point, defendant incorporated the arguments made during the hearing on his motion to suppress police statements and added that "the police engaged in coercive tactics to obtain his inculpatory statements" (pursuant to new section 103-2.2 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-2.2 (West Supp. 2021)), which became effective in January 2022 (see Pub. Act 102-101, § 10 (eff. Jan. 1, 2022))). A certificate of counsel under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) was filed shortly thereafter. The record makes clear that the newly filed motion was an amendment of the *pro se* motion, and the trial court noted that it had "allowed [defense counsel] to file the amended pleading."

¶ 16        Defendant's motion to withdraw his guilty plea was heard on October 14, 2021, at which time arguments were made and the following testimony was received from defendant.

¶ 17 According to defendant, he felt coerced into entering his guilty plea. When asked to explain, defendant stated, "I feel like the plea wasn't intelligently made." When asked to explain further, he testified:

"Because there's a bill that I was actually looking up and this bill was critical to my position in the case because my case around other people, you know, it—it—me out in—in the case. But there as a shooter that admitted to being the shooter and there was things taken from the house that put me in the position of felony murder, but no proof has ever been brought up that I took anything from the house."

¶ 18 He continued:

"It was—it was specific things that were taken and these specific things were found on another person's person but I never been caught with anything, but I'm still under the accountability act because of my juvenile statement of me placing myself at the scene and other things, but it's a bill that come out in January that helps me."

¶ 19 Counsel then clarified that the statute in question was part of Public Act 102-101 (eff. Jan. 1, 2022), and said, "that's the bill now the law that takes effect in 2022." Defendant agreed that the applicability of the statute was one of the things he wanted to challenge in his case. Defendant's counsel then remarked that defendant wanted to challenge the suppression ruling on appeal and added, "that's one of the things he's concerned about is statements made to police and not having access to family, that [court ruling is] part of the reason he felt coerced into entering the plea."

¶ 20 Counsel then asked defendant about his remaining allegations in his motion to withdraw his guilty plea. Defendant agreed that he did not feel the evidence was sufficient to

convict him, that he did not know that a robbery was going to take place, and that his sentence was excessive. Defendant added:

> "[I]t's a bad case, but at the end of the day I didn't participate. I didn't partake because I came doesn't make me accountable. What makes me accountable is participation, and they would have to show that but nobody ever showed that. I sat almost five years nobody ever showed it."

¶ 21    Counsel then asked defendant if he believed he was "coerced into entering the plea because nothing was moving forward and nobody was helping [him] with his case," to which defendant agreed. Defendant stated that:

> "The case was built off of inconsistent statements and what scared me into the plea deal if the State is prepared to take me on trial with just inconsistent statements, which everybody in the case made inconsistent statements, so when you go against those statements and they've prepared to go to trial with that, I'm—I'm not—I couldn't go to trial about it I couldn't."

¶ 22    On cross-examination by the State, defendant was asked, "who did you feel like was doing the coercion?" Defendant answered:

> "I feel like nobody—me—me personally I was trying to be reasonable during the whole time of the case so I felt like the State—nobody—nobody came to a proper agreement for my position. Just my position in the case is felony murder, but we all get sentenced differently. My position in the case is something we—we—I was in the position to where they could've came down. They could've came down to something at least. Murder and armed robbery, I don't even fit that criteria."

6

¶ 23    Defendant was then asked whether his plea counsel had advised him at the time of his plea, to which defendant answered, "Yeah. He—he was telling me, like, what was in my favor and what was against me, but he never told me that I had a bill that was about to come about that was critical to my position." He was then asked:

"Q. Okay. Now you said that he was telling you what was good for you, bad for you, he was advising you specifically about the plea deal, wasn't it?

A. It was really just that he didn't feel I could win at trial. So the good really wasn't good, you know, for me to make—I understand what the plea agreement is, but if I do have something coming in my favor in the coming months or even in next year because I just plead guilty last year, this bill would have made me get in a better position for trial or a different plea deal because I know the family in this case so it would have been better for me to be able to negotiate and the State been able to come to a reasonable, you know, time period for me just me and my position. So I feel like this would have been critical. It would've made the State call out what evidence do they have. It's not that you can't use a statement, what else can you use, and they can't use anything else."

¶ 24    Following additional arguments from counsel on the motion to withdraw defendant's guilty plea, the trial court denied it. In so doing, the court stated that, from its review of the transcript, defendant was "very carefully admonished regarding the charges—or charge that he plead guilty to, his constitutional rights, the potential penalties and so on." The court added, "There's no question in my mind he entered into the plea agreement knowingly, voluntarily, and intelligently." Moreover, the court stated, "I think there's evidence to support the felony murder count that [defendant] plead guilty to, and I don't believe his statement was coerced."

¶ 25      This appeal followed.

¶ 26                              II. ANALYSIS

¶ 27      Defendant argues that his testimony at the hearing on his motion to withdraw his guilty plea raised a claim of ineffective assistance of counsel that was ignored by the trial court. He asks that this case be remanded for a preliminary inquiry into his ineffective assistance of counsel allegations as required by *Krankel*. The State responds that defendant's appeal is untimely because he did not file a notice of motion with his motion to reduce sentence and that, as a result, we lack jurisdiction. Alternatively, the State argues that, even if there is jurisdiction to hear the appeal, defendant's testimony did not constitute a "clear claim" asserting ineffective assistance of counsel, and thus did not trigger a preliminary inquiry under *Krankel*. We address these issues in turn.

¶ 28                              A. Jurisdiction

¶ 29      The State argues we lack jurisdiction to consider this appeal because the October 22, 2021, notice of appeal—although timely filed within 30 days of the trial court's denial of defendant's motion to withdraw his guilty plea—sprang from a series of untimely posttrial motions. Defendant filed a *pro se* motion to reconsider sentence within the requisite 30-day period following the court's sentencing order (see Ill. S. Ct. R. 604(d) (eff. July 1, 2017)), but the State argues the *pro se* motion was nevertheless untimely because it was not accompanied by a notice of motion as required by statute. The State contends that, because the original *pro se* motion to reconsider sentence was untimely, the amended motion to withdraw the guilty plea filed months later was likewise untimely and, as a result, the notice of appeal violates Rule 604(d).

8

¶ 30        Defendant, on the other hand, acknowledges that a concurrently filed notice of motion was required, but he argues that the consequence of failing to file one does not render the motion itself untimely, *i.e.*, the defect is not jurisdictional.

¶ 31                                1. *Standard of Review*

¶ 32        The question of whether a defendant complied with the procedures for filing a motion to reconsider sentence imposed after guilty plea or to withdraw such plea is subject to *de novo* review. *People v. Grice*, 371 Ill. App. 3d 813, 815 (2007). Likewise, we review questions of statutory interpretation *de novo*. *People v. Donoho*, 204 Ill. 2d 159, 172 (2003). A *pro se* defendant "must comply with the rules of procedure required of those represented by counsel, and a court should not apply more lenient standards to a *pro se* defendant." *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 39; *People v. DeRossett*, 237 Ill. App. 3d 315, 339 (1992).

¶ 33         2. *Implications of a Failure to File a Concurrent Notice of Motion*

¶ 34        Defendant was sentenced on February 24, 2020. He filed his *pro se* motion to reconsider sentencing on March 3—in other words, within the requisite 30 days—but his motion was not accompanied by a notice of hearing. The question before us, then, is whether the requirement for filing a notice of motion is a jurisdictional requirement that would render untimely an otherwise timely motion. As with any question of statutory interpretation, we begin by examining the words of the statute.

¶ 35        As of the date of sentencing in this case, proceedings on a motion to reconsider sentence were governed by section 5-4.5-50(d), which provides as follows:

> "A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing

9

shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence. *A motion not filed within that 30-day period is not timely.* The court may not increase a sentence once it is imposed. *A notice of motion must be filed with the motion.* The notice of motion shall set the motion on the court's calendar on a date certain within a reasonable time after the date of filing.

If a motion filed pursuant to this subsection is timely filed, the proponent of the motion shall exercise due diligence in seeking a determination on the motion and the court shall thereafter decide the motion within a reasonable time.

If a motion filed pursuant to this subsection is timely filed, then for purposes of perfecting an appeal, a final judgment is not considered to have been entered until the motion to reduce the sentence has been decided by order entered by the trial court." (Emphases added.) 730 ILCS 5/5-4.5-50(d) (West 2020).

¶ 36 Our primary task in construing a statute is to ascertain and effectuate the intent of the legislature. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011). Where the statute's language is clear and unambiguous, "we must apply the statute without further aids of statutory construction." *People v. Williams*, 239 Ill. 2d 503, 506 (2011) (citing *People v. Bole*, 155 Ill. 2d 188, 197-98 (1993)). The best indicator of the legislature's intent is the statutory language, given its plain and ordinary meaning. *Corbett v. County of Lake*, 2017 IL 121536, ¶ 30.

¶ 37 On its face, the statute requires the following of a defendant: (1) that a written motion be filed, (2) that the motion be filed within 30 days of the judgment, (3) that the motion be accompanied by a notice of hearing setting the matter within a reasonable time, and (4) that the defendant must "exercise due diligence in seeking a determination on the motion." 730 ILCS 5/5-

10

4.5-50(d) (West 2020). The question here is which of these requirements are jurisdictional, *i.e.*, which step, if not taken within 30 days of the judgment, would render the whole effort untimely? The legislature answered this question in the plain language it used: "A *motion* not filed within that 30-day period is not timely." (Emphasis added.) *Id.*

¶ 38       We need not rely on any canons of statutory construction to see that the filing of the *motion* is jurisdictional, but the filing of a notice of hearing—though required—is not. This is a conclusion based on the clear language of the statute. Where the language is clear and unambiguous, a court must apply the statute as written, without resort to further aids of construction. *People v. Clark*, 2019 IL 122891, ¶ 26. Furthermore, even if we were to resort to a rule of statutory construction, the one that appears most applicable here is the maxim *expressio unius est exclusio alterius*: the expression of one thing in a statute is the exclusion of another. *People v. Roberts*, 214 Ill. 2d 106, 117 (2005). The legislature has expressly stated that the timely filing of a motion is a jurisdictional requirement; this is an implicit exclusion of the other statutory requirements, including the filing of a notice of hearing, as *jurisdictional* requirements.

¶ 39       The fact that the notice is not jurisdictional does not mean it is unimportant. It still must be filed with the motion, though the consequence for failing to do so is not spelled out. However, the statute does require "due diligence" in the prosecution of the motion, so the failure to file the notice along with the motion would be a relevant consideration in that context. The statutory requirement of due diligence appears to give the trial court appropriate discretion in ensuring that such a motion does not linger.

¶ 40                  3. *Earlier Cases and Statutory Amendment*

11

¶ 41    We are aware of prior cases that hold that both a motion *and* a notice must be filed within the statutory 30-day time frame to confer jurisdiction over a motion to reconsider sentence. See *Stevenson*, 2011 IL App (1st) 093413; *People v. Jennings*, 279 Ill. App. 3d 406 (1996); *People v. Taggart*, 268 Ill. App. 3d 84 (1994); *People v. Gambill*, 91 Ill. App. 3d 302, 303 (1980). However, all four cases dealt with a now-repealed version of the statute that is worded differently from the one applicable here. To understand whether these cases have continuing vitality on the issue at hand, it is necessary to understand how the prior statute compares to the current one.

¶ 42    The former section of the Unified Code dealing with the filing of a motion to reduce sentence was section 5-8-1(c), and it originally provided as follows:

> "A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence. However, the court may not increase a sentence once it is imposed.
>
> If a motion filed pursuant to this subsection is timely filed within 30 days after the sentence is imposed, the proponent of the motion shall exercise due diligence in seeking a determination on the motion and the court shall thereafter decide such motion within a reasonable time.
>
> If a motion filed pursuant to this subsection is timely filed within 30 days after the sentence is imposed, then for purposes of perfecting an appeal, a final judgment shall not be considered to have been entered until the motion to reduce a sentence has been decided by order entered by the trial court.

*A motion filed pursuant to this subsection shall not be considered to have been timely filed unless it is filed with the circuit court clerk within 30 days after the sentence is imposed together with a notice of motion*, which notice of motion shall set the motion on the court's calendar on a date certain within a reasonable time after the date of filing." (Emphasis added.) 730 ILCS 5/5-8-1(c) (West 2008).

¶ 43     The statute has, therefore, materially changed with respect to the question of whether a notice of motion—though still a requirement—is a *jurisdictional* requirement. The former version of the statute clearly established that it was, stating that a "motion filed pursuant to this subsection shall not be considered to have been timely filed unless it is filed with the circuit court clerk within 30 days after the sentence is imposed *together with a notice of motion.*" (Emphasis added.) *Id.* The statute now speaks to timeliness as being dependent only on the filing of the *motion* within 30 days: "A *motion* not filed within that 30-day period is not timely." (Emphasis added.) 730 ILCS 5/5-4.5-50(d) (2020). When a statute is amended, there is a presumption that the legislature intended to change the law as it previously existed. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 299 (2010). Furthermore, we can see that when the legislature wished to make filing of both the motion *and notice* a jurisdictional prerequisite to timeliness, it knew how to make clear such an intention. The fact that the legislature specifically removed the reference to a notice of motion from the language defining timeliness further supports the interpretation we made, above, on the face of the current statute.

¶ 44     The State argues, however, that the legislature intended the current statute to be a simple restatement of the old one. The State relies on another provision of statute containing the amendment in question, section 5-4.5-990(b) of the Unified Code, which reads as follows: "A provision of this Article 4.5 or any other provision of this amendatory Act of the 95th General

Assembly that is the same or substantially the same as a prior law shall be construed as a continuation of the prior law and not as a new or different law." 730 ILCS 5/5-4.5-990(b) (West 2020). The State argues the former and amended versions of the relevant provision of the statute are "substantially similar" and should be similarly interpreted.

¶ 45        Enacted in April 2009, and effective July 1, 2009, the amendatory act of the Ninety-Fifth General Assembly, Public Act 95-1052 (eff. July 1, 2009) constituted the first major revision to the Unified Code since 1961. The new law was designed to "clarify various sentencing provisions in the [Unified Code], eliminate inconsistencies and redundancies, and conform the [Unified] Code to established case law, with the goal of making the [Unified] Code more understandable, consistent, and just." John J. Cullerton, Peter G. Baroni, Daniel S. Mayerfield, Ryan J. Rohlfsen, & Paul H. Tzur, *New Law Clarifies Illinois' Sentencing Statutes*, 97 Ill. B.J. 466, 467 (Sept. 2009). In *People v. Hanson*, 2014 IL App (4th) 130330, ¶ 16, *overruled on other grounds by People v. Birge*, 2021 IL 125644, ¶ 50, we acknowledged that "section 5-8-1(c) of the Unified Code *** is now codified under section 5-4.5-50(d)." The legislature's admonition in section 5-4.5-990(b) sensibly alerts courts to the fact that wholesale change to the Unified Code was not intended.

¶ 46        But there is more to the analysis. The legislature did not say that there were *no* changes effected by the 2009 law, only that the new law should be viewed "as a continuation of the prior law" where it is "the same or substantially the same." 730 ILCS 5/5-4.5-990(b) (West 2020). Many parts of the new law are indeed the same as the old one—but not all of them. More specifically, the provisions we are examining here are not the same; they are materially different. Consequently, the provision relied on by the State is not operative here, and in its absence, the

normal presumption—that a change in the statute is presumed to have intended to effect a change in the law—applies. *McGinnis*, 238 Ill. 2d at 299.

¶ 47     We find that we have jurisdiction to consider the merits of this appeal. The initial *pro se* motion to reconsider sentence, filed within 30 days of sentencing, was timely filed even though no notice of motion accompanied it upon filing. Although the case sat dormant for a period of over a year because defendant's attorneys were unaware of his *pro se* filing, no objection was filed and the matter went forward. The motion to withdraw defendant's guilty plea, filed over 13 months later and considered an amendment to the initial *pro se* motion, was likewise timely. See *People v. Kibbons*, 2016 IL App (3d) 150090, ¶ 12 ("Even though the defendant filed the wrong motion under Rule 604(d), it was a timely motion directed against the judgment and tolled the time for appeal under Rule 606(b)."). Defendant thereafter filed a timely notice of appeal after the denial of his motion to withdraw his guilty plea.

¶ 48     Accordingly, we conclude that jurisdiction exists and therefore deny the State's request to dismiss the appeal.

¶ 49                          B. Request for *Krankel* Remand

¶ 50     Having found jurisdiction, we now turn to the merits of the appeal. Defendant characterizes the issue as whether the trial court ignored his claims of ineffective assistance by his plea counsel made during his posttrial hearing, and he requests a remand for a preliminary or "first stage" *Krankel* hearing to further explore his purported claims. The State, relying on *People v. Ayres*, 2017 IL 120071, and this court's decision in *People v. Thomas*, 2017 IL App (4th) 150815, argues that defendant's posttrial hearing comments did not "sufficiently trigger" *Krankel*.

¶ 51                          1. Krankel*'s Requirements*

¶ 52	*Krankel* and its progeny establish the procedures a trial court must follow when a *pro se* defendant raises a posttrial claim of ineffective assistance of counsel. See *Krankel*, 102 Ill. 2d at 187-89; *People v. Jolly*, 2014 IL 117142, ¶ 29; *People v. Roddis*, 2020 IL 124352, ¶ 34; *People v. Jackson*, 2020 IL 124112, ¶ 95. These procedures serve " 'the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims' " (*Jackson*, 2020 IL 124112, ¶ 95 (quoting *People v. Patrick*, 2011 IL 111666, ¶ 39)) " 'to promote consideration of *pro se* ineffective assistance claims in the trial court and to limit issues on appeal.' " *Id.* (quoting *Patrick*, 2011 IL 111666, ¶ 41).

¶ 53	A *Krankel* inquiry proceeds in two stages. *People v. Palomera*, 2022 IL App (2d) 200631, ¶ 56. First, when a defendant makes a *pro se* claim of ineffective assistance of counsel, *Krankel* requires the trial court to conduct a preliminary inquiry into the factual basis of the claim. *Id.* (citing *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 43). The second stage involves "an adversarial and evidentiary hearing on the defendant's claims, and during this hearing the defendant is represented by *Krankel* counsel." *Downs*, 2017 IL App (2d) 121156-C, ¶ 43.

¶ 54	A trial court is not automatically required to appoint new counsel in every case where a defendant raises a *pro se* claim of ineffective assistance. See *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). If the trial court determines that the claim either lacks merit or pertains only to matters of trial strategy, then the court does not need to appoint new counsel and may deny the defendant's *pro se* motion on its own accord. See *id.* at 78; *Jolly*, 2014 IL 117142, ¶ 29. "A claim lacks merit if it is conclusory, misleading, or legally immaterial or does not bring to the trial court's attention a colorable claim of ineffective assistance of counsel." *People v. McLaurin*, 2012 IL App (1st) 102943, ¶¶ 39-40; *People v. Burks*, 343 Ill. App. 3d 765, 774 (2003). It is only when the defendant's allegations show "possible neglect" of the case on the part of counsel that the court

16

must appoint new counsel and conduct a separate hearing on ineffectiveness. *Moore*, 207 Ill. 2d at 78; see also *People v. Vargas*, 409 Ill. App. 3d 790, 801 (2011) (stating the hearing is known as a "*Krankel* inquiry"). Whether *Krankel* procedures apply to a particular proceeding presents a question of law that is reviewed *de novo*. *People v. Custer*, 2019 IL 123339, ¶ 25.

¶ 55        Against this background, we examine defendant's contentions on appeal.

¶ 56                    2. *Defendant's Initial Pro Se Motion (March 2020)*

¶ 57        Illinois law is clear that *Krankel only* applies to posttrial claims raised *pro se* by defendants alleging that trial counsel was ineffective. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 102 (citing *People v. McGath*, 2017 IL App (4th) 150608, ¶ 49), *aff'd as modified*, 2019 IL 124143, ¶¶ 21, 32-33. Here, defendant's March 2020 *pro se* motion did not raise any concerns about ineffective assistance of trial or plea counsel; instead, it alleged the evidence against him was insufficient. Because no concerns of ineffective assistance of counsel were raised in the *pro se* motion, *Krankel* was not triggered by the initial *pro se* filing.

¶ 58                    3. *Defendant's Amended Motion (August 2021)*

¶ 59        The amended motion filed by counsel, which was styled as a motion to withdraw defendant's guilty plea, made one oblique reference to the alleged inadequacies of plea counsel: an allegation that "his attorney, the Court, and the prosecutor would not agree to a more appropriate sentence under 20 years." However, at this point, there is no *Krankel* issue raised by a pleading filed on behalf of defendant *by his attorney*. The objective of a *Krankel* inquiry is to allow the trial court "to decide whether independent counsel is necessary to argue a defendant's *pro se* posttrial ineffective assistance claims at a full *Krankel* hearing." *In re Johnathan T.*, 2022 IL 127222, ¶ 23. Here, defendant had an appointed attorney different from plea counsel, who was free to raise any claim of her predecessor's ineffectiveness. We note that posttrial motion counsel represented

17

defendant at trial prior to plea counsel and that both attorneys were appointed by the public defender's office (plea counsel was in private practice but was appointed by the public defender's office). In *People v. Munson*, 265 Ill. App. 3d 765, 768, 770 (1994), the court held that there is no *per se* conflict of interest when an assistant public defender is assigned to challenge the effectiveness of another assistant from the same office. See also *People v. Banks*, 121 Ill. 2d 36, 43 (1987). No objection to posttrial counsel's representation was raised below or in this court.

¶ 60　　　　4. *Defendant's Oral Comments Did Not "Trigger" a Preliminary* Krankel *Hearing*

¶ 61　　　　Defendant's comments at the hearing on the motion to withdraw his plea require a somewhat closer examination. A represented defendant's own statements about his prior counsel's ineffectiveness may be sufficient to trigger a *Krankel* inquiry. See *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 18; see also *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 20 (Defense counsel's withdrawal and the subsequent appointment of new counsel did not moot the need to appoint independent counsel to investigate defendant's *Krankel* claim, once triggered.).

¶ 62　　　　While we examine defendant's comments at the motion hearing in the context of the foregoing authority, we find that they were inadequate to trigger a *Krankel* hearing. In *Ayres*, the supreme court held that a defendant must bring a "clear claim asserting ineffective assistance of counsel, either orally or in writing," to trigger the trial court's duty to conduct a preliminary *Krankel* hearing. *Ayres*, 2017 IL 120071, ¶ 18. "If a defendant does not make a valid ineffective assistance claim, [he] does not trigger the need for the trial court to inquire." (Internal quotation marks omitted.) *Thomas*, 2017 IL App (4th) 150815, ¶ 24.

¶ 63　　　　Defendant acknowledges he did not use the words "ineffective assistance of counsel" in his October posttrial motion hearing testimony, but he nonetheless asserts that he alleged facts sufficient to trigger a preliminary *Krankel* hearing, namely that (1) he was coerced

18

into his plea agreement because his case was delayed and "nothing was moving forward," (2) his plea attorney did not advise him about the pending statutory change concerning custodial statements made to police by a minor, and (3) no one helped him with his case.

¶ 64        Whether the allegations of ineffective assistance of counsel are sufficient to trigger a trial court's duty to conduct a *Krankel* inquiry is a question of law subject to *de novo* review. *People v. Bell*, 2018 IL App (4th) 151016, ¶ 36 (citing *People v. Taylor*, 237 Ill. 2d 68, 75-76 (2010)). "[W]here the defendant's claim is implicit and could be subject to different interpretations, a *Krankel* inquiry is not required." *Thomas*, 2017 IL App (4th) 150815, ¶ 26 (citing *Taylor*, 237 Ill. 2d at 77).

¶ 65        On defendant's first claim—that he was coerced into his plea agreement because his case was delayed and "nothing was moving forward"—we need only examine the record on appeal to see that defendant's case was ready for jury trial on February 24, 2020, the same day his negotiated plea agreement was presented to the trial court. At the outset of proceedings that day, the court stated: "[W]e were just about ready to start a jury trial, and I have the witness list and statement of the nature and jury instructions and so on, and I was getting my questions together, and I understand there may be a plea agreement." Given this posture, defendant's contention that he was somehow coerced into accepting the plea because his case was not moving forward is flatly contradicted by the record. He entered his plea the very day he would otherwise have gone to trial.

¶ 66        As to his second argument—that his plea attorney did not advise him about the pending statutory change concerning custodial statements made to police by a minor—we again find an insufficient trigger for a preliminary *Krankel* inquiry. The statute referenced (725 ILCS 5/103-2.2(b) (West Supp. 2021)) was not yet even introduced as a bill (Senate Bill 2122 was introduced the February *following* defendant's negotiated plea (102d Gen. Assem., Senate Bill

19

2122, 2021 Sess.; 102d Ill. Gen. Assem., Senate Proceedings, Feb. 26, 2021, at 43.)). Surely the obligation of effective assistance does not extend to the ability to see the future. Moreover, on its face, the statute only applies to custodial interrogations of a minor conducted "*on or after* the effective date" of January 1, 2022. (Emphasis added.) 725 ILCS 5/103-2.2(b) (West Supp. 2021). Defendant's custodial interrogation occurred in September 2015. Thus, defendant's second contention on its face lacks merit and does not constitute a "clear claim asserting ineffective assistance" which would trigger a preliminary inquiry under *Krankel*.

¶ 67        Defendant's final claim is that no one "helped" him with his case. Here again, the record is clear that defendant was represented by counsel of his choice, both before and during his plea negotiations. He was initially represented by a retained private attorney. Later, he was assigned a contract attorney through the public defender's office; defendant specifically requested that attorney by name. He was represented by a different attorney from the public defender's office in connection with his postplea motions. Having been represented by counsel throughout, it is insufficient for defendant to vaguely claim that "no one helped" him without giving any hint of what help he feels he was deprived of.

¶ 68        As we said in *Thomas*, while the courts "have lessened the burden on defendants, unskilled in the law, to make an assertion sufficient to warrant a *Krankel* inquiry," courts of review should be "reluctant to require trial courts to somehow glean an ineffective-assistance-of-counsel claim from every obscure complaint or comment made by a defendant." *Thomas*, 2017 IL App (4th) 150815, ¶ 30. On this record, defendant failed to trigger a preliminary *Krankel* inquiry by vaguely complaining that no one "helped" him.

¶ 69                                III. CONCLUSION

20

¶ 70     For the reasons stated above, we find that appellate jurisdiction exists to consider defendant's claims. With respect to defendant's contention that *Krankel* issues arose out of the proceedings on his motion to withdraw his guilty plea, we find that no *Krankel* inquiry was required and therefore affirm the trial court's dismissal of the motion.

¶ 71     Affirmed.

*People v. Cook*, 2023 IL App (4th) 210621

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Macon County, No. 15-CF-1119; the Hon. Thomas E. Griffith, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Brian L. Josias, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Scott Rueter, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |