NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220597-U

NOS. 4-22-0597, 4-22-0598 cons.

IN THE APPELLATE COURT

FILED
September 21, 2023
Carla Bender
4ᵗʰ District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McDonough County |
| DAMON J. NIETHE, | ) | Nos. 21CF116 |
| Defendant-Appellant. | ) | 21CF128 |
| | ) | |
| | ) | Honorable |
| | ) | Raymond A. Cavanaugh, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Turner and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed defendant's convictions for theft and unlawful possession of firearm ammunition by a felon, finding that (1) defendant was not entitled to a *Krankel* hearing, (2) his conviction for unlawful possession of firearm ammunition by a felon was not against the manifest weight of the evidence, and (3) trial counsel did not render ineffective assistance.

¶ 2    In separate proceedings that are now consolidated on appeal, defendant Damon J. Niethe was convicted of theft (720 ILCS 5/16-1(a) (West 2020)) (appeal No. 4-22-0597) and unlawful use or possession of a firearm and firearm ammunition by a felon (UPWF) (*id.* § 24-1.1(a)) (appeal No. 4-22-0598). He was sentenced to 3 years in prison for theft and 12 years in prison for his UPWF convictions, with credit given in each sentence for time served in the county jail. In appeal No. 4-22-0597, defendant argues that his case should be remanded for a *Krankel*

hearing because the trial court failed to inquire concerning purported allegations of ineffective assistance of counsel made by defense counsel in a written posttrial motion. See *People v. Krankel*, 102 Ill. 2d 181, 189 (1984). In appeal No. 4-22-0598, he argues (1) the State failed to prove beyond a reasonable doubt that he knowingly possessed ammunition that was concealed in another individual's vehicle, which he was driving and (2) that his trial counsel was ineffective regarding the arguments made in support of his pretrial motion to suppress.

¶ 3        We affirm.

¶ 4                                I. BACKGROUND

¶ 5        Defendant's consolidated appeals relate to his separate convictions in McDonough County for two events that took place in mid-2021. Appeal No. 4-22-0597 involves his conviction for a June 22, 2021, theft relating to a motor scooter and a 20-gallon water tank owned by Joel Feikert. Appeal No. 4-22-0598 involves defendant's convictions for knowingly possessing a firearm and firearm ammunition on July 6, 2021. Defendant was interrogated by police for each incident—on June 22 for the theft and on July 7 for the UPWF incident—and a copy of each video recording was played for the jury during the respective trials.

¶ 6        We examine the pertinent facts of each case separately.

¶ 7        A. Appeal No. 4-22-0597/ McDonough County case No. 21-CF-116—Theft

¶ 8        On June 21, 2021, a theft occurred at a property owned by Joel Feikert in Bushnell, Illinois. Defendant was charged by information with burglary (count I) (720 ILCS 5/19-1(a) (West 2020)) and theft (count II) (*id.* § 16-1(a)) relating to a black motor scooter and a 20-gallon water tank belonging to Joel Feikert. Following a jury trial, he was convicted of theft but acquitted on the burglary charge.

¶ 9        The sole issue on appeal relates to defendant's entitlement to a *Krankel* hearing based on written arguments contained in defense counsel's posttrial motion; therefore, we limit our discussion to those facts relating to the *Krankel* issue.

¶ 10        1. *Admissibility of Defendant's June 22, 2021, Interrogation Video*

¶ 11        During trial, the State offered into evidence a video of defendant's June 22, 2021, police interrogation, People's exhibit D, during which defendant had remarked that he did not want to return to prison and that he was tired of being in prison. The video was then admitted into evidence without objection. Although defense counsel did not initially object to its admission, as the video began to play to the jury, he asked for a sidebar. Outside of the jury's presence, counsel interposed the following objection:

> "I did not object originally, but just remembering the interview itself, I think I'm going to object at this point because there is a part of the interview that my client states that, you know, he's not trying to go back to prison and mentions that. I feel like if that's brought up throughout the interview, that's going to be an improper impeachment towards my client. And I feel like the jury would weigh heavily on the fact that he's been to prison before and some of the comments that he's made in regards to that would affect the jury's decision."

¶ 12        The State argued that the motion should be denied and added that, "based upon my recollection the defendant's statements regarding his criminal history were all initiated by the defendant. They weren't in response to questions by law enforcement." According to the State, defendant "made affirmative statements regarding not wanting to go back to prison on his own and not in response to questions from Detective Phelps." Counsel also argued the objection was late and that the video had already been "accepted into evidence."

¶ 13 In denying defense counsel's objection, the trial court found that defendant's incarceration had been brought up by defendant, who "throughout the course of the trial \*\*\* brought out a couple times that [defendant's] been in jail in Fulton County on fines and had a warrant for arrest for fines in McDonough County when he was arrested." The court felt that this "indicates in some way that he had a prior criminal history of some kind." The court did not address the State's contention that the objection had been waived.

¶ 14 Following defense counsel's objection, the video was "admitted over objection." The full interrogation video was then played to the jury.

¶ 15 2. *Motion for New Trial*

¶ 16 Following defendant's conviction for theft, he moved by counsel for a new trial, arguing, *inter alia*, that the trial court erred by admitting the June 22, 2021, interrogation video, because it contained defendant's statements that he did not want to go back to prison. Concerning the admissibility of the video, and following counsel's arguments, the court stated: "I've seen nothing or heard nothing which would show that this Court should have found the statements to have been involuntarily made." Moreover, the court remarked:

> "I believe the Defendant received a fair trial \*\*\*. And even if some of this evidence would not have been allowed into evidence, I don't think it would have changed the outcome \*\*\*. The Defendant was found not guilty Count I on 21-CF-116, the most serious charge, the burglary offense \*\*\*.
>
> I believe the trial was fairly held and the jury worked through their deliberation appropriately, and I believe that the trials were both fairly decided by the juries, and I don't believe there's a sufficient basis to grant the Defendant a new trial."

¶ 17        The trial court denied defendant's posttrial motion on June 16, 2022.

¶ 18                                3. *Sentencing*

¶ 19        Defendant was sentenced to three years in prison, with credit for time served in the county jail.

¶ 20              B. Appeal No. 4-22-0598/McDonough County case No. 21-CF-128,

                   Unlawful Possession of Firearm Ammunition

¶ 21        Defendant was charged with aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2020)) (count I), unlawful possession of a firearm by a felon (*id.* at § 24-1.1(a)) (count II), and unlawful possession of firearm ammunition by a felon (*id.*) (count III).

¶ 22                                1. *General Facts*

¶ 23        Defendant and Adrian Niethe are brothers. Adrian is married to Holli Warner. In February 2021, defendant moved into Adrian and Warner's residence, and he remained in the home until he was told to leave in approximately mid-June 2021. At about the same time, Adrian and Warner separated. Adrian explained that he kicked his brother out of his house because "he was doing drugs in my house [with Warner] and I didn't approve of it." There was also testimony that Warner and defendant were in a relationship. In late June, Warner obtained an order of protection against Adrian.

¶ 24        On July 6, 2021, defendant and Warner were at the Gas Depot convenient mart in Macomb, Illinois. Warner went into Gas Depot while defendant remained in the car as its driver. While Warner was in the gas station, defendant's brother Adrian arrived at the gas station on his motorcycle. Adrian noticed Warner's vehicle at the gas station and saw his brother sitting in the driver's seat. Defendant then drove out of the parking lot to avoid being seen by his brother. Adrian

- 5 -

entered Gas Depot but did not notice Warner. However, Warner saw Adrian and immediately left the store and began walking briskly towards her car and got into the passenger seat.

¶ 25        Shortly after Adrian exited Gas Depot, he saw Warner's vehicle leaving the parking lot. He rode his motorcycle towards the vehicle and, after an angry exchange of words, the two vehicles ended up in a nearby bank's parking lot. Defendant testified that Adrian parked his motorcycle in front of Warner's vehicle, blocking his exit; Adrian denied doing so. Although the testimony conflicts in some respects, it shows that the two men exchanged heated words, and a confrontation seemed to be developing. As Adrian walked towards Warner's car, defendant either retrieved or was given a loaded firearm (a Springfield XD 9-millimeter handgun owned by Warner), which he subsequently pointed towards Adrian and fired. The testimony varied as to whether one or two shots were fired and whether defendant actually aimed the gun at his brother or fired into the ground. A 9-millimeter cartridge case was found in the parking lot at the location where defendant was parked. The cartridge case matched the ammunition recovered from the firearm as well as that found in Warner's vehicle.

¶ 26        The police located a 9-millimeter firearm in the hotel room shared by Warner and defendant and found 9-millimeter firearm ammunition in Warner's vehicle's trunk (two loose rounds) and in the driver's side door compartment (a partially filled 200-round box). When retrieved by the police, the firearm contained a chambered round; additional rounds were in its magazine.

¶ 27        It was stipulated that, at the time of the incident, defendant had been convicted of a felony in 2014.

¶ 28                                        2. *Pretrial Matters*

¶ 29　　　　Prior to trial, defendant moved to suppress his July 7, 2021, custodial interrogation video and exclude it from evidence. The motion argued that defendant was intoxicated at the time of his interrogation and that he was, therefore, unable to waive his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) knowingly and intelligently. According to defendant's motion, he was interrogated by police over seven hours after being taken into custody. The motion further asserted:

>　　　　"Before being interviewed, the Defendant only stated 'uh huh,' when acknowledging his *Miranda* rights. While he was being interrogated, the Defendant had no shirt on, and was making abnormal body movements and statements."

¶ 30　　　　Defendant contended that these movements and statements indicated he was grossly intoxicated and "never had the capacity to waive his *Miranda* rights," and he requested the State be barred from using any and all statements he made during the custodial interrogation.

¶ 31　　　　At the hearing on defendant's motion to suppress, the State played the interrogation video and presented testimony from Lindsey May, a lieutenant with the Macomb Police Department working in investigations, who had participated in the interrogation. May confirmed that defendant had been taken into custody at about midnight on July 7 and that the interrogation occurred the following morning at around 6 to 7 a.m. At the outset of the interrogation, defendant denied any sort of drug use or consumption of alcohol and during the interview, he said, "I'm good. I'm sober." Defendant walked into the interrogation room under his own power, sat down with no problems, and appeared to be engaged throughout the interrogation. Defendant orally agreed that he understood his *Miranda* rights and signed a written *Miranda* waiver during the interrogation.

¶ 32 May testified he had had prior contact with defendant on approximately 10 occasions; he believed defendant was under the influence during some of these encounters. May said he had previously interviewed defendant in the jail two or three times and described for the court his prior experiences with defendant:

> "When I've interviewed [defendant] in the past, very animated. Like I said earlier, talks very mumbled, kind of as I do. But then when he gets agitated, his body starts to flail around. He starts to be pretty assertive in his talking as it progresses louder, and he has a street slang to his talk when he talks when he's trying to get a point across."

¶ 33 May was then asked:

> "Q. And would it be fair to say based on the interview on July 7th that [defendant] might have been under the influence of something?
>
> A. I do not believe so ***. In my opinion, I do not believe he was under the influence of anything at the time because of the time frame, but I do believe his body was reacting to not having narcotics in his system."

¶ 34 The trial court denied the motion to suppress, finding that defendant had orally acknowledged his rights and also signed a written acknowledgement. The court further found that defendant was "able to understand" and that, during parts of the interrogation, "was able to articulate past events that took place. He acknowledged that he was good and sober. There was no evidence of gross intoxication."

¶ 35 The trial court subsequently denied defendant's motion to reconsider its ruling.

¶ 36 Defendant filed a motion *in limine* requesting that "any evidence that references him going to prison and evidence regarding another firearm incident be barred from trial." The

latter request referred to a UPWF charge pending in McDonough County case No. 21-CF-139 for a matter in Bushnell on July 3, 2021. The same arguments were also made in defendant's motion to sever his trial in the instant case from case No. 21-CF-139. Although the trial court granted the motion to sever, it denied that portion of the motion *in limine* seeking to bar introduction of the July 7 interrogation video. According to the court, defendant's statements about not wanting to go back to jail were "not in response to any of Lieutenant May's questions. They were spontaneous statements or utterances." The court ruled that the video would come into evidence at trial.

¶ 37                                3. *Conviction Following a Jury Trial*

¶ 38            On April 19, 2022, defendant was convicted of knowingly possessing a firearm (count II) and firearm ammunition (count III) by a felon; he was acquitted of aggravated discharge of a firearm (count I).

¶ 39                                4. *Posttrial Motion and Sentencing*

¶ 40            Defendant filed a motion for a new trial, challenging the admission of various "Chirp" messages (a matter which is not at issue on appeal) and the introduction of the July 7 interrogation video. The latter argument asserted that defendant had filed a motion *in limine* to prevent introduction of the statements regarding not wanting to go back to jail and the other firearms charge and that he was continuing to argue that the video should not have been allowed into evidence. The motion for a new trial did not challenge the verdict or the ruling on the motion to suppress.

¶ 41            The posttrial motion was denied.

¶ 42            On that same day, defendant was sentenced to 12 years in prison on the charge of knowing possession of a firearm and of firearm ammunition, with credit for time served in the county jail. A motion to reconsider and reduce the sentence was filed, but it was denied.

¶ 43    This appeal followed.

¶ 44                        II. ANALYSIS

¶ 45    We address the merits of each appeal in turn.

¶ 46            A. Right to a *Krankel* Hearing—Appeal No. 4-22-0597

¶ 47    Defendant argues that this court should remand this case to the trial court for a *Krankel* hearing on potential ineffective assistance of counsel because his trial counsel's written motion for new trial "explained that he made a mistake when [counsel] failed to object to the interrogation video being admitted in its entirety." Defendant claims the court erroneously failed to inquire concerning "defense counsel's extremely credible allegation of [his] own ineffectiveness."

¶ 48                        1. Krankel *Hearing*

¶ 49    As this court recently held in *People v. Cook*, 2023 IL App (4th) 210621, ¶ 52, "*Krankel* and its progeny establish the procedures a trial court must follow when a *pro se* defendant raises a posttrial claim of ineffective assistance of counsel." (citing *Krankel*, 102 Ill. 2d at 187-89; *People v. Jolly*, 2014 IL 117142, ¶ 29; *People v. Roddis*, 2020 IL 124352, ¶ 34; *People v. Jackson*, 2020 IL 124112, ¶ 95). The objective of a *Krankel* inquiry is to allow the trial court "to decide whether independent counsel is necessary to argue a defendant's *pro se* posttrial ineffective assistance claims at a full *Krankel* hearing." *In re Johnathan T.*, 2022 IL 127222, ¶ 23.

¶ 50    As we explained in *Cook*, "[t]hese procedures serve ' "the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims [citation] to promote consideration of *pro se* ineffective assistance claims in the trial court and to limit issues on appeal. [Citation.]" (Internal quotation marks omitted.) *Cook,* 2023 IL App (4th) 210621, ¶ 52. "Whether *Krankel* procedures

apply to a particular proceeding presents a question of law that is reviewed *de novo*." *Id.* ¶ 54; *People v. Custer*, 2019 IL 123339, ¶ 25.

¶ 51                                       2. *Application to Our Facts*

¶ 52          Illinois law is clear that *Krankel* only applies to posttrial claims raised *pro se* by defendants alleging that trial counsel was ineffective. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 102 (citing *People v. McGath*, 2017 IL App (4th) 150608, ¶ 49), *aff'd as modified*, 2019 IL 124143, ¶¶ 21, 32-33. Here, *Krankel* was not triggered by any *pro se* action taken by defendant. First, defendant did not file a *pro se* motion before the trial court. See, *e.g.*, *Cook*, 2023 IL App (4th) 210621, ¶ 57 (considering defendant's *pro se* motion to reconsider sentence but concluding that no *Krankel* issues had been raised). Second, although it is true that a represented defendant's *oral* statements about his counsel's ineffectiveness may be sufficient to trigger a *Krankel* inquiry (see *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 18; *Jackson*, 2020 IL 124122, ¶ 96), a review of the posttrial motion hearing transcript shows defendant did not testify or make any remarks to the court. Accordingly, defendant raised no *pro se* claims of ineffective assistance of counsel.

¶ 53          Next, we briefly address defendant's central assertion on this issue—that *defense counsel's* written posttrial motion arguments triggered the need for a *Krankel* hearing. Defendant's posttrial motion argued only that the trial court should have sustained counsel's objection to entering the interrogation video into evidence; in short, the arguments centered on the *substance* of the asserted objection, not counsel's own ineffectiveness. Indeed, Illinois law provides that an attorney cannot raise his or her own ineffectiveness except at the direction of the defendant. *Bates*, 2019 IL 124143, ¶ 33. It is "inappropriate for trial counsel to argue his own ineffectiveness." *McGath*, 2017 IL App (4th) 150608, ¶ 52 (citing *People v. Lawton*, 212 Ill. 2d 285, 296 (2004) (stating a lawyer faces an "inherent conflict of interest" when he argues his own ineffectiveness)).

¶ 54 Although the written posttrial motion acknowledged that counsel initially "did not object" to the video's introduction into evidence and that he subsequently objected "after remembering that the Defendant [had] made some prejudicial comments," it is patently evident that the supporting arguments were directed against the ruling itself. It is equally apparent that the trial court's ruling on the objection was not based on waiver or tardiness in objecting. The court listened to counsel's objection, overruled it because "defense counsel 'opened the door' for testimony about the Defendant being incarcerated on a previous matter,' " and made a docket entry stating that the video was "admitted over objection."

¶ 55 We conclude there was no *pro se* action taken by defendant, whether by motion or orally, to trigger a *Krankel* hearing.

¶ 56 Because the appeal does not raise any challenge to the trial court's substantive ruling on the objection or the actual admission of the video into evidence, we affirm jury's verdict in case No. 4-22-0597.

¶ 57 B. Knowing Possession of Firearm Ammunition—Appeal No. 4-22-0598

¶ 58 Defendant challenges the sufficiency of the evidence to support the jury's guilty verdict on the charge of knowingly possessing ammunition by a felon. Specifically, he contends the State failed to prove beyond a reasonable doubt that he "knowingly possessed ammunition that was concealed in Holli Warner's car."

¶ 59 Section 24-1.1(a) of the Criminal Code of 2012 provides, in part:

"It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the

person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2020).

¶ 60　　　　The statute further provides that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." *Id.* § 24-1.1(e). The purpose underlying the UPWF statute " 'is to protect the health and safety of the public by deterring possession of weapons by convicted felons, a class of persons that the legislature has determined presents a higher risk of danger to the public when in possession of a weapon.' " *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 14 (quoting *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986)).

¶ 61　　　　"In order to establish knowing possession, the State must prove that the defendant had actual or constructive possession of the contraband." *People v. Hester*, 271 Ill. App. 3d 954, 961 (1995) (citing *People v. Adams*, 242 Ill. App. 3d 830, 832 (1993)). When a defendant is not found in actual possession of firearm ammunition, the State must prove constructive possession. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). To establish constructive possession, the State must show that defendant (1) had knowledge of the presence of the firearm ammunition and (2) exercised immediate and exclusive control over the area where the ammunition was found. *Id.*

¶ 62　　　　Knowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which one can infer that he knew the contraband existed in the place where it was found. *People v. Beverly*, 278 Ill. App. 3d 794, 798 (1996). Control is established when a defendant has the "intent and capability to maintain control and dominion" over an item, even if he lacks personal present dominion over it. *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). A defendant's control over the location where ammunition is found gives rise to an inference that he possessed

- 13 -

the ammunition. See *People v. Hines*, 2021 IL App (1st) 191378, ¶¶ 31-32 (citing *McCarter*, 339 Ill. App. 3d at 879) (dealing with weapons).

¶ 63          We review a defendant's challenge to the sufficiency of the evidence "to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Grimes*, 386 Ill. App. 3d 448, 455 (2008) (citing *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007)). " 'This same standard of review applies regardless of whether the evidence is direct or circumstantial.' " *Id.* (quoting *People v. Cooper*, 194 Ill. 2d 419, 431 (2000)). "Because the jury is in the best position to judge the credibility and demeanor of the witnesses, its findings are entitled to great weight." *Id.* (citing *Wheeler*, 226 Ill. 2d at 114-15).

¶ 64          Here, although defendant did not raise the sufficiency of the evidence argument in his posttrial motion, we note that a defendant "can never forfeit his or her challenge to the sufficiency of the evidence proving an element of a criminal offense." *People v. Clifton*, 2019 IL App (1st) 151967, ¶ 44 (citing *People v. Cregan*, 2014 IL 113600, ¶ 16). Thus, we consider this contention on appeal.

¶ 65          Defendant has failed to show that the jury's verdict was against the manifest weight of the evidence. As a starting point, we note that defendant concedes the existence of his prior felony charge. He asserts, however, that he did not know that there was ammunition in the vehicle and that he had no control over Warner's vehicle; in essence, he is arguing a lack of knowledge sufficient to support constructive possession.

¶ 66          Defendant wholly overlooks the overwhelming evidence in the record that he *held* (and thus possessed) a firearm (he was also convicted of unlawful possession of a firearm by a felon, count II), that the firearm was loaded at that time, and that he *discharged* ammunition from

- 14 -

it. According to witnesses Warner and Adrian Niethe, defendant held the handgun and fired it. Warner, who owned the gun, testified that it was "fully loaded" and that there was ammunition stored with it in the center console of the car. She testified that defendant reached into the center console and grabbed the firearm, then fired it at the ground in Adrian's direction. Adrian confirmed that defendant aimed the gun at him and fired it. He was then asked, "And at what point do you see your brother with the gun?" to which Adrian responded, "At the point that he pulls it out from below and pulls it out." Adrian said the gun was pointed directly at him and that he was looking at defendant when the gun was fired.

¶ 67        We can likewise consider defendant's admission at trial that he possessed a loaded firearm and fired it. Defendant testified that Adrian was walking towards him when "Holli handed me the firearm, and I shot the gun out the window into the ground." He elaborated, "I stuck my arm out the window and pointed the gun in the ground and fired a single shot into the ground." Defendant, however, claimed that Warner removed the gun from her purse and handed it to him and denied it was located in the center console. This testimony constitutes direct evidence of actual possession by defendant of firearm ammunition.

¶ 68        Section 5/24-1.1(a) (the UPWF statute) authorizes "separate convictions when a felon possesses a loaded firearm, a conviction based on the firearm and a conviction based on the ammunition inside that firearm." *People v. Almond*, 2015 IL 113817, ¶ 36; see *People v. Anthony*, 2011 IL App (1st) 091528-B, ¶ 9; *People v. Howard*, 2014 IL App (1st) 122958, ¶¶ 17-18; *cf. People v. Lee*, 379 Ill. App. 3d 533, 538 n.2 (2008) (charges merged into one conviction under former statute but acknowledged that the Criminal Code of 1961 was subsequently "amended by Public Act 94-284 (Pub. Act. 94-284, eff. July 21, 2005), such that possession of any firearm or firearm ammunition constitutes a single and separate violation of the statute"). Here, count III of

the information stated that defendant "knowingly possessed firearm ammunition, being 9mm handgun rounds, at a time when he was not on his own land or in his own abode or fixed place of business, after having been previously convicted of a forcible felony [(burglary)]."

¶ 69　　　　It is the responsibility of the trier of fact to weigh, resolve conflicts in, and draw reasonable inferences from the testimony and other evidence. *People v. Harris*, 2018 IL 121932, ¶ 26. We do not retry a defendant. *People v. Eubanks*, 2019 IL 123525, ¶ 95. A defendant's conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *Hines*, 2021 IL App (1st) 191378, ¶ 31. We conclude the jury, as trier of fact, was free to infer defendant's actual possession of ammunition based on the strong evidence—including defendant's own testimony—that he held a loaded firearm and subsequently discharged it. We need not address the arguments relating to constructive possession.

¶ 70　　　　Although defendant complains that the charging documents did not properly charge him with simultaneous possession of a firearm and possession of firearm ammunition, this argument has also been forfeited. First, the issue was only raised in defendant's reply brief, and it is well-settled that issues raised for the first time in the reply brief do not merit consideration on appeal and are forfeited. *Tivoli Enterprises, Inc. v. Brunswick Bowling & Billiards Corp.*, 269 Ill. App. 3d 638, 642 (1995) (citing *Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.*, 252 Ill. App. 3d 96, 98 (1993)). Second, the issue of proper charging is likewise forfeited because it was not raised at trial or in defendant's posttrial motion. See *People v. Davis*, 352 Ill. App. 3d 570, 573 (2004) ("[T]he defendant did not timely object to the allegedly deficient charging instrument or jury instructions at trial. As such, the defendant's argument is waived.").

¶ 71　　　　We therefore affirm the jury's verdict on count III.

¶ 72                 C. Ineffective Assistance of Counsel—Appeal No. 4-22-0598

¶ 73        Defendant further argues ineffective assistance of counsel, contending that his trial attorney failed to properly support the motion to suppress his July 7, 2021, interrogation video, which was shown to the jury during trial. He has not, however, appealed the merits of the motion to suppress. Thus, we examine his ineffective assistance claim.

¶ 74                    1. *Ineffective Assistance of Counsel Claims*

¶ 75        This court analyzes claims of ineffective assistance of counsel under the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 40 (citing *People v. Evans*, 186 Ill. 2d 83, 93 (1999)); see *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10. To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below minimal professional standards and (2) a reasonable probability exists the defendant's trial was affected. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88; *People v. Petrenko*, 237 Ill. 2d 490, 496-97 (2010).

¶ 76        To satisfy the deficiency prong of *Strickland*, "the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as 'counsel' guaranteed by the sixth amendment." *Merriweather*, 2022 IL App (4th) 210498, ¶ 40 (citing *Evans*, 186 Ill. 2d at 93). "Effective assistance of counsel refers to competent, not perfect representation." (Internal quotation marks omitted.) *Evans*, 209 Ill. 2d at 220. Moreover, "[m]istakes in trial strategy or tactics do not necessarily render counsel's representation defective." *Thomas*, 2017 IL App (4th) 150815, ¶ 10 (citing *People v. Kyse*, 220 Ill. App. 3d 971, 794 (1991)). Indeed, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Merriweather*, 2022 IL App (4th) 210498, ¶ 40 (citing *Evans*, 186 Ill. 2d at 93). "This court is highly deferential of counsel's

performance." *In re T.R.*, 2019 IL App (4th) 190529, ¶ 126 (citing *McGath*, 2017 IL App (4th) 150608, ¶ 38). This deferential standard is used because " '[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' " *Id.* (quoting *Strickland*, 466 U.S. at 689).

¶ 77    To satisfy the prejudice prong, a defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Id*. ¶ 125; *Thomas*, 2017 IL App (4th) 150815, ¶ 11; *People v. Houston*, 229 Ill. 2d 1, 4 (2008). A "reasonable probability" has been defined as a probability which would be sufficient to undermine confidence in the outcome of the trial. *Houston*, 229 Ill. 2d at 4. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35; see *Merriweather*, 2022 IL App (4th) 210498, ¶ 40 (quoting *Hibbler*, 2019 IL App (4th) 160897, ¶ 88).

¶ 78    A defendant's claim of ineffective assistance of counsel on appeal is reviewed under the *de novo* standard. *Hibbler*, 2019 IL App (4th) 160897, ¶ 88; *T.R.*, 2019 IL App (4th) 190529, ¶ 128.

¶ 79                    2. *No Prejudice Shown*

¶ 80    In this case, we can dispose of defendant's assertion of ineffective assistance of counsel on the prejudice prong alone. See, *e.g.*, *People v. Smith*, 195 Ill. 2d 179, 188 (2000) ("If a defendant cannot establish that he suffered prejudice, a court need not determine whether counsel's performance was constitutionally deficient."); *People v. Coleman*, 183 Ill. 2d 366, 397-398 (1998) ("Courts, however, may resolve ineffectiveness claims under the two-part *Strickland* test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel's performance.").

¶ 81    As we previously detailed (*infra* ¶ 66), Warner and Adrian Niethe each testified that defendant held and discharged a loaded firearm. Thus, even if the interrogation video had *not* been admitted into evidence, and even if defendant had *not* testified at trial, sufficient evidence was presented by Warner and Adrian to establish that defendant possessed firearm ammunition; he fired the handgun, which necessarily implies it contained ammunition. Based on this testimony, defendant has failed to show a reasonable probability that the result at trial would have been different had the July 7 interrogation video been suppressed. See *Jackson*, 2020 IL 124112, ¶ 90.

¶ 82    We conclude that defendant cannot establish ineffective assistance of counsel because, even if we were to conclude that counsel was deficient in handling the motion to suppress the interview, defendant cannot show that he suffered any prejudice. Thus, he failed to satisfy the second prong of *Strickland*: that "absent counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different." *Id.* Because defendant must satisfy both prongs of this test, the failure to establish either is fatal to his claim. *Id.* (citing *Strickland*, 466 U.S. at 697).

¶ 83                                III. CONCLUSION

¶ 84    For the reasons stated, we affirm the trial court's judgment.

¶ 85    Affirmed.