# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Washington, 2012 IL App (2d) 101287**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON A. WASHINGTON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-1287 |
| Filed | May 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for attempted first-degree murder was affirmed over his contention that the trial court failed to consider his *pro se* pretrial motion alleging ineffective assistance of counsel based on an alleged violation of the requirements of section 109-3.1(b) of the Code of Criminal Procedure that felony defendants be indicted or receive a preliminary hearing within 30 days of being taken into custody, since although counsel's failure to move to dismiss based on the violation was not exempt from the prejudice requirement of *Strickland*, the trial court, pursuant to *Jocko*, did not have to consider the claim until after the trial, and after trial there was nothing suggesting prejudice from the delayed indictment. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 06-CF-268; the Hon. Robbin J. Stuckert, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Clay Campbell, State's Attorney, of Sycamore (Lawrence M. Bauer and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices McLaren and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant, Brandon A. Washington, appeals from his conviction of attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)). He asserts that we should reverse because the court failed to follow the rule derived from *People v. Krankel*, 102 Ill. 2d 181 (1984), which imposes a duty on the trial court to inquire into the validity of *pro se* posttrial claims of ineffective assistance of counsel and, in some circumstances, appoint counsel to aid the defendant with such claims. The State responds that, under the rule in *People v. Jocko*, 239 Ill. 2d 87 (2010), the court has no duty to inquire when a defendant makes a *pretrial* complaint about counsel's performance. We hold that, under *Jocko*, the court's duty before trial is limited to determining whether a defendant's complaint about counsel's performance falls within an exception to the prejudice requirement of *Strickland v. Washington*, 466 U.S. 668 (1984), and, if it does not fall within an exception, the court is not obligated to apply *Krankel* before trial. Here, the court made sufficient inquiry to determine that defendant's complaint did not fall within any exception to the prejudice requirement; no error occurred. Moreover, nothing in the claims called for the court to reexamine them after the trial. We therefore affirm defendant's conviction.

¶ 2                       I. BACKGROUND

¶ 3      On May 27, 2009, the State charged defendant by complaint with attempted first-degree murder and aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2008)). Two days later, the court appointed a private attorney to represent defendant. Counsel promptly filed a speedy-trial demand and a motion for discovery. On July 2, 2009, counsel asked for "a fairly long continuance" on the basis that defendant was imprisoned on other charges. On September 11, 2009, a grand jury indicted defendant; as subsequently amended on July 23, 2010, the indictment contained six counts, including the two already listed. At a mid-

September court date, counsel told the court that the Illinois Department of Corrections was scheduled to release defendant in about 90 days. On that basis, the court gave him a status date of March 25, 2010.

¶ 4 Defendant did not appear at that status date; he was no longer in custody. As of April 1, 2010, he was in jail, having been arrested on a new warrant.

¶ 5 On May 25, 2010, defendant filed a *pro se* motion asserting that counsel was ineffective because he failed to hold the State to the 30-day deadline of section 109-3.1(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/109-3.1(b) (West 2008)). That section requires that, within 30 days of being taken into custody, a felony defendant either be indicted or receive a preliminary examination. Failing that, a defendant can move for dismissal of the complaint under section 114-1(a)(11) of the Code (725 ILCS 5/114-1(a)(11) (West 2008)). Dismissal under section 114-1(a)(11) is not a bar to the State's refiling of the charges. 725 ILCS 5/114-1(e) (West 2008). Defendant also alleged that counsel had failed to arrange for him to be writted in for a July 2, 2009, status date that occurred while defendant was serving an earlier-imposed sentence. Nothing occurred on that date, but, in his motion, defendant objected to the further continuance of his case. Finally, he asserted that counsel had not shown him any of the material that the State had produced in discovery.

¶ 6 On May 27, 2010, counsel apologized to defendant for not having been to see him; counsel was under the misapprehension that defendant was jailed in another county. The court told counsel and the State that defendant had filed the *pro se* motion, and counsel responded by asking the court to continue the matter so that he and defendant could "talk about it." The court said that, because of its schedule, a continuance would have to be for more than a week. Defendant told the court that he did not want any more continuances. Counsel then asked for a trial date; the court set a date of August 9, 2010. No further mention was made of defendant's motion. Defendant later agreed personally to a continuance of slightly more than a month; this was after the court agreed to the joinder of this case with another one stemming from the same shooting.

¶ 7 Defendant had a jury trial that began on September 13, 2010. The victim of the shooting, Jason Johnson, testified. He identified defendant as the person who had shot him while he was in a group of people gathered in a parking lot. Defendant said something disrespectful, Johnson tried to deflect it, defendant left, and a few minutes later he returned and shot Johnson in the face. Johnson had seen defendant perhaps twice before the shooting, but did not know him by name. He identified defendant in a photo lineup while he was hospitalized with the gunshot wound. Johnson had been at a party before he went out and met the group. He had drunk what he described as "two cups" of vodka during the party. When he was shot, the alcohol was affecting him, but he did not think that he was drunk.

¶ 8 Miguel Espinoza testified that a friend had received a text message that there was about to be a fight nearby. He found a group of people, among whom was defendant, whom he knew. He saw defendant lift his right hand and then heard a "pow." People scattered, and he ran away. He later identified defendant in a photo lineup.

¶ 9 A De Kalb police officer testified that, after witnesses had identified defendant in the lineups, the police learned that defendant had been seen in Aurora. When the police

-3-

approached defendant in Aurora, he fled on foot, but was taken into custody.

¶ 10    Jessica Contreras, the mother of defendant's child, testified that she went to a laundromat on the afternoon after the shooting to give defendant's child to defendant's mother, Sophia Thomas. While she was talking with Thomas, defendant came in acting nervous and saying that "the cops" were after him. He said that he had shot and possibly killed someone. Jessica's aunt, Martha Contreras, who worked in the laundromat and was present when defendant came in, gave testimony confirming that defendant had said that he had shot someone.

¶ 11    After the State rested, the defense presented the testimony of two witnesses. Thomas testified that, on the afternoon after the shooting, she went to the laundromat with defendant. She was present for all of defendant's conversation with Jessica. She did not hear defendant say that he had shot someone or make any other incriminating statement.

¶ 12    David Mack also testified for defendant. He believed that he had been present at the time and location of the alleged shooting, but he had seen nothing unusual.

¶ 13    The defense rested after the testimony of the two witnesses. The jury found defendant guilty of attempted first-degree murder, further finding that defendant personally discharged a firearm that proximately caused great bodily harm. It also found him guilty on all other counts.

¶ 14    The court determined that all other convictions merged into the attempted murder conviction that specified that defendant had personally discharged a firearm. It denied a posttrial motion from defendant that asserted that it had erred in refusing to excuse certain potential jurors for cause and in barring defense exhibits. Defendant made no further allegations of ineffective assistance of counsel. The court sentenced defendant to 38 years' imprisonment. Defendant did not file a postsentencing motion, but filed a timely notice of appeal.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, defendant's sole argument is that, under the rule in *Krankel*, the court had a duty to inquire into the validity of the claims that defendant raised in his *pro se* pretrial motion. We conclude that, under the rule in *Jocko*, the circumstances did not call for any investigation beyond reading the motion to determine whether it suggested the applicability of any exception to *Strickland*'s prejudice requirement. The motion suggested no such exception and, after the trial, no prejudice was evident. Thus, nothing in defendant's claims required the court to revisit the motion posttrial.

¶ 17    The question of whether a court has given proper attention to a defendant's *pro se* motion claiming ineffective assistance of counsel is a legal question. See *People v. Moore*, 207 Ill. 2d 68, 75 (2003). We decide the answer to such a "legal question independently of the trial court's judgment." *Id.*

¶ 18    Under the rule in *Krankel*, when a defendant, acting *pro se*, raises a posttrial claim that counsel has been ineffective, the court *might* be required to take specific steps, such as appoint new counsel to aid the defendant in developing the claim. *Krankel*, 102 Ill. 2d at 189.

However, the *Krankel* rule has long been limited in that the court need not appoint new counsel if its examination of the claim shows that it is "without merit or related to a matter of trial tactics." *People v. Crane*, 145 Ill. 2d 520, 533 (1991).

¶ 19    The supreme court summarized the fully developed rule in *Moore*:

"New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed. \*\*\*

The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. [Citation.] During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation \*\*\* on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Moore*, 207 Ill. 2d at 77-79.

As this holding suggests, the supreme court has explicitly applied *Krankel* only to posttrial motions.

¶ 20    In *Jocko*, the defendant filed several *pro se* pretrial documents, including a motion in which he asserted that, because counsel had not been present for the arraignment or the bail hearing, he had been deprived of effective assistance of counsel. *Jocko*, 239 Ill. 2d at 89. The court placed the motion on the call, but never heard it; it never addressed or became aware of the other documents. *Id.* A jury convicted the defendant of burglary. Before the supreme court, the defendant asserted that "the circuit court should have conducted an inquiry into the various claims of deficient representation raised in his *pro se* documents." *Id.* at 90-91. The supreme court held that, excluding instances where prejudice is irrelevant, a circuit court is not obligated to apply *Krankel* (*i.e.*, address a defendant's *pro se Strickland* claims) before trial, because *Strickland* claims, which require that counsel's deficient performance affect the outcome and, thus, prejudice the defendant (*Strickland*, 466 U.S. at 687), "cannot be resolved prior to trial." *Jocko*, 239 Ill. 2d at 92. It explained that addressing *Strickland* claims before trial is problematic because the outcome has not yet been determined and, therefore, it is impossible to determine if counsel's errors affected the outcome. *Id.* at 93. As examples of situations where prejudice is irrelevant and, therefore, where the circuit court is obligated, prior to trial, to investigate potential sixth amendment violations, the supreme court cited *United States v. Cronic*, 466 U.S. 648 (1984), concerning complete deprivation of counsel, and *Holloway v. Arkansas*, 435 U.S. 475 (1978), concerning a court's duty to investigate a

potential conflict of interest. *Jocko*, 239 Ill. 2d at 92.[1]

¶ 21 On the facts of the case, the supreme court further held that the trial court did not err in failing to revisit the defendant's motion after the trial. *Id.* at 93. The court recognized that "[g]enerally a *pro se* defendant is not obligated to renew claims of ineffective assistance once they are made known to the circuit court." *Id.* However, it noted that the record either flatly contradicted the claims that the defendant had raised in his *pro se* documents or reflected that the trial court was unaware of them; thus, it held that the trial court acted properly when it did not revisit the claims. *Id.* at 93-94.

¶ 22 Thus, based on the foregoing case law, a trial court's duties with respect to a pretrial *pro se* filing or oral representation claiming ineffective assistance of counsel are as follows. First, the court, at a minimum, must review the defendant's assertions to assess whether or not the court must consider the possible prejudicial effect on the outcome of the proceeding. Next, if the court determines that resolution of the defendant's claims does not require that it consider possible prejudice (*e.g.*, in situations where there is a potential conflict of interest or there has been a complete deprivation of counsel), then it must apply *Krankel* before trial. If the court determines that it must consider possible prejudice as to the outcome, then it is not obligated to apply *Krankel* before trial, although, at the end of trial, the court should address the defendant's previously raised ineffective-assistance claims by conducting a posttrial *Krankel* analysis (*i.e.*, examining the factual bases of the defendant's claims to determine if they have merit and whether counsel should be appointed).

¶ 23 Following these guidelines, we conclude that, here, the court did not err in its handling of defendant's motion. We consider first defendant's claim that counsel should have filed a motion to dismiss for failure to indict or bring to preliminary hearing under section 109-3.1(b) of the Code and, second, his claims that counsel did not have him writted in for a hearing and had not shown him any discovery materials.

¶ 24 The failure of counsel to bring a motion to dismiss based on section 109-3.1(b) is not exempt from *Strickland*'s prejudice requirement. As we noted in *People v. Youngblood*, 389 Ill. App. 3d 209, 215 (2009), any resulting dismissal would be without prejudice to the filing of new charges. Therefore, to make a claim of ineffective assistance of counsel based on the failure to file such a motion, a defendant must show prejudice based on the outcome of the trial, and not just the failure to get a temporary dismissal. *Id.* Because this claim required a showing of prejudice, under *Jocko* the court did not need to consider it until after trial. And after trial, nothing would have suggested prejudice from the delayed indictment. The allegations remained insufficient on their face, and the court did not need to inquire further.

¶ 25 Defendant's other claims are simply not serious ineffective-assistance-of-counsel claims. Neither defendant's complaint that counsel did not have him writted in from the Department of Corrections for a July 2, 2009, status date nor defendant's complaint that counsel had failed to show him discovery materials describes deficient conduct by counsel. In any event, such claims did not fall into any exception to *Strickland*'s prejudice requirement and were

---

[1]The court's list of possible complaints that do not require a prejudice analysis (and that thereby trigger a pretrial *Krankel* inquiry) is, of course, not exhaustive.

thus not cognizable before trial. Nothing happened in the trial to suggest prejudice from delay, insufficient communication between counsel and defendant, or anything else that would relate to these complaints. Therefore, no reason existed for the court to revisit those claims after trial.

¶ 26                                                    III. CONCLUSION

¶ 27        Defendant's claims of ineffective assistance of counsel were insufficient on their face both when made and after trial. As defendant's only claim of error thus fails, we affirm his conviction.

¶ 28        Affirmed.