# Illinois Official Reports

## Appellate Court

***People v. Morgan*, 2017 IL App (2d) 150463**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEENAN MORGAN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0463 |
| Filed | August 4, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 14-CF-2935; the Hon. Mark L. Levitt, Judge, presiding. |
| Judgment | Remanded. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Christopher M. McCoy, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Lawrence M. Bauer, and Ivan O. Taylor, Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1        After a jury trial, defendant, Keenan Morgan, was found guilty of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)) and sentenced to seven years in prison. The trial court denied defendant's motion for a new trial, and defendant timely appeals. The sole issue raised on appeal is whether the trial court adequately inquired into defendant's *pro se* claim of ineffective assistance of counsel. For the reasons that follow, we remand.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was indicted on two counts of unlawful possession of a weapon by a felon (*id.*), two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(C), (a)(3)(A-5) (West 2014)), and one count of defacing identification marks on a firearm (720 ILCS 5/24-5(b) (West 2014)).

¶ 4        On December 10, 2014, the parties had a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). The State made a plea offer. The terms of the offer were not stated on the record.

¶ 5        On February 17, 2015, the parties had a second Rule 402 conference. Thereafter, the parties appeared before the court. The State indicated that, during the conference, the State "modified [its] offer to four years in the DOC at 50 percent." According to the State, defendant rejected that offer, and the State revoked it. The trial court confirmed with defendant that the State had offered him a four-year prison sentence on a Class 2 felony. The court advised defendant that, given his background, if he were to go to trial, the potential prison sentence would range from 3 to 14 years. Defendant confirmed that he wanted to reject the State's offer of four years and proceed to trial.

¶ 6        On February 24, 2015, at the outset of defendant's jury trial, defense counsel stated that she had a *bona fide* doubt as to defendant's fitness to stand trial. The trial court then questioned defendant about his understanding of the criminal legal process. After speaking with defendant, the court agreed that a fitness evaluation was warranted and ordered an evaluation. Dr. Anthony Latham evaluated defendant that afternoon, and a fitness hearing took place the next day.

¶ 7        At the outset of the fitness hearing, the parties stipulated to Dr. Latham's qualifications and to his fitness evaluation, wherein he recommended that defendant be found fit to stand trial. The report also contained the following comments in the summary:

        "[Defendant] expressed much dissatisfaction, if not vitriol, when discussing his interactions with his attorney such as his perception that she 'does not really give a f***' and has only met with him three times since he was jailed October 25, 2014. [Defendant] indicated that he asks his attorney the same questions because of the duration and infrequency of the time he has met with her. He also expressed dissatisfaction that his attorney informed him that there was 'a deal of two years on the table.' [Defendant] stated that he wanted to take this deal but his attorney told him it was possible that he could receive a term of probation. [Defendant] then indicated that he never rejected the deal for two years but his attorney informed him that this deal was no longer available as he wanted a term of probation. [Defendant] then

expressed that he is only following his attorney's lead. He later pondered the prospects of being assigned an alternative attorney because of his belief that his current attorney has provided 'ineffective counsel.'

    \*\*\* He also indicated that his current defense counsel does not listen to him. He indicated that he was offered 4-years which he claimed he wanted to accept."

Defense counsel told the trial court that she did not think that she and defendant could work together. She stated:

    "Judge, I would note that although the doctor found him him [*sic*] fit there are many statements throughout the entire evaluation regarding the relationship between myself and the defendant. That's always been the issue of the defendant's fitness for me he is unable to assist me as laid out specifically by Dr. Latham, a skeptical view of me, his demeanor towards me, I think the word vivitrol or vitrol was used when he's speaking about me, and due to that breakdown in the relationship I do think it's possible that [defendant] and I are just not able to work together in this circumstance, and I do believe that [defendant] has a motion based on that."

¶ 8      In response, the court indicated that it had reviewed the report and found defendant fit to stand trial. Thereafter, the following colloquy occurred:

    "THE COURT: Okay. What's your motion, [defendant]?

    THE DEFENDANT: Um, ineffective counsel.

    THE COURT: Why?

    THE DEFENDANT: I don't feel like [defense counsel] has my best interest.

    THE COURT: You disagree with her?

    THE DEFENDANT: Right.

    THE COURT: Anything else? Anything specifically she didn't do for you?

    THE DEFENDANT: Um, she don't—I don't feel that is really putting an effort, you know, reduce—I mean damage that's about to be done.

    THE COURT: You mean get you a lower sentence?

    THE DEFENDANT: Yes.

    THE COURT: Listen, [defendant], I understand that sometimes relationships with attorneys can be strained especially when an attorney tries to be honest with you. I understand your [*sic*] in a position where it's your life and you feel like you want to have good news all the time, but I've got to tell you an attorney's job is not always to give you good news, it's also to give you bad news if it's there.

    I observed [defense counsel] throughout these proceedings. I can find nothing to indicate in the record or in my observations of her conduct throughout these proceedings to even suggest that she has done anything other than represent you to the fullest of her abilities.

    She happens, in my view, to be one of the best defense lawyers that works in this county that I have seen, [defendant]. You should could [*sic*] yourself lucky to a [*sic*] good lawyer working for you. I know you don't always agree. Take me at my word. Your motion to discharge her for ineffective assistance is denied. What else do you have, [defendant]?

    THE DEFENDANT: Nothing else."

¶ 9 Following defendant's jury trial, defendant was found guilty of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)).

¶ 10 Defendant filed a motion for a new trial, arguing, *inter alia*, that "[t]he Court erred when it did not grant the Defendant's *pro se* pretrial motion for alternative counsel to be appointed due to a break down in the attorney client relationship and communication." The trial court denied the motion, ruling as follows: "I reviewed your motion for a new trial. It largely deals with matters that were dealt with at the time the case was—at or before the time the case was tried. I stand by my rulings." The trial court sentenced defendant to seven years in prison.

¶ 11 Defendant timely appeals.

¶ 12                                    II. ANALYSIS

¶ 13 Defendant contends that the trial court erred in failing to adequately inquire into his *pro se* claim of ineffective assistance of counsel. The State responds that the trial court's inquiry was adequate and that the court properly determined defendant's claim to be meritless.

¶ 14 Pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, the following procedure should be followed to determine whether new counsel should be appointed:

> " '[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed.' " *People v. Jolly*, 2014 IL 117142, ¶ 29 (quoting *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003)).

¶ 15 To determine whether new counsel should be appointed, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary." *Moore*, 207 Ill. 2d at 78. As part of that interchange, the trial court may question defense counsel and the defendant about the facts and circumstances surrounding the defendant's allegations. *Id.* However, an interchange with counsel or the defendant is not always necessary, as "the trial court can base its evaluation *** on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 79. In every case, the court must "conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel." *Id.*

¶ 16 We note that defendant's *pro se* claim was made before trial. A trial court is not obligated to conduct a pretrial preliminary *Krankel* hearing on a defendant's pretrial ineffective-assistance-of-counsel claim unless the allegations suggest that prejudice will be presumed, *e.g.*, where there is a conflict of interest or the complete deprivation of counsel. See *People v. Jocko*, 239 Ill. 2d 87, 92-93 (2010); *People v. Washington*, 2012 IL App (2d) 101287, ¶ 22. Nevertheless, the trial court is not precluded from addressing a defendant's pretrial claim at a pretrial hearing. See *Washington*, 2012 IL App (2d) 101287, ¶ 22.

¶ 17 Regardless of whether a preliminary *Krankel* hearing was held pretrial or posttrial, "[t]he operative concern for the reviewing court is whether the trial court conducted an adequate

inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 78; see also *Washington*, 2012 IL App (2d) 101287, ¶¶ 19, 22. "The question of whether a court has given proper attention to a defendant's *pro se* motion claiming ineffective assistance of counsel is a legal question." *Washington*, 2012 IL App (2d) 101287, ¶ 17.

¶ 18   Here, although the trial court inquired into defendant's *pro se* claim of ineffectiveness, the inquiry was inadequate as it did not address the factual basis of defendant's claim. To be sure, when defendant alleged that defense counsel was ineffective, the court asked defendant if there was anything specific that counsel failed to do. And, although defendant's response was less than articulate, the court confirmed with defendant that his claim concerned counsel's failure to "get [him] a lower sentence." But the court stopped its inquiry too soon. In the fitness evaluation (which counsel specifically cited when alerting the court to defendant's *pro se* motion), defendant complained that the State had made various plea offers that he had wanted to accept, that counsel did not listen to him, and that he was only following counsel's lead. Yet when the court questioned defendant, it did not ask defendant about his discussions with counsel or how counsel failed to obtain a lower sentence. Nor did it ask counsel any questions about defendant's claim. Instead, the court's evaluation of defendant's claim was based on its knowledge of counsel's performance. However, the court could not rely on its observations of counsel because defendant's claim was not based on counsel's in-court performance. See *People v. Vargas*, 409 Ill. App. 3d 790, 803 (2011) ("While the trial judge had the opportunity to observe counsel's performance, the claims asserted by defendant related to matters *de hors* the record and not readily ascertainable by a trial judge."). Because the court failed to inquire into the specifics of defendant's claim, the court could not fully evaluate it. Thus, a remand is necessary for the limited purpose of conducting a proper inquiry under *Krankel*. See *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 44 ("When the defendant's *pro se* posttrial claims of ineffective assistance of counsel are based on matters outside the record, and the trial court fails to conduct an adequate *Krankel* inquiry, the proper remedy is to remand the matter to the trial court for the limited purpose of allowing the trial court to conduct the required inquiry.").

¶ 19                                III. CONCLUSION

¶ 20   For the reasons stated, we remand for the limited purpose of allowing the trial court to inquire into the factual basis of defendant's ineffective-assistance claim. If defendant's allegations show possible neglect of the case, the court should appoint new counsel to argue defendant's claim of ineffective assistance. However, if the court concludes that defendant's claim lacks merit or pertains only to matters of trial strategy, the court may deny the claim.

¶ 21   Remanded.