NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250418-U

NO. 4-25-0418

IN THE APPELLATE COURT

FILED
February 2, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| TY DENNIS ROBINSON, | ) | No. 21CF101 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Colby G. Hathaway, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court conducted a sufficient inquiry into defendant's claims of ineffective assistance, and its finding that the claims lacked merit was not manifestly erroneous.

¶ 2    After a bench trial, defendant Ty Dennis Robinson was convicted of aggravated driving under the influence (DUI) while his license was suspended (625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2020)) and resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2020)). The trial court ultimately conducted a preliminary hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), to ascertain the factual basis for defendant's claims of ineffective assistance and make an adequate record of them. On appeal, he argues that the court's preliminary *Krankel* inquiry was insufficient and that he is entitled to a second hearing. We disagree and affirm.

¶ 3                    I. BACKGROUND

¶ 4                    A. The Charges

¶ 5    In March 2021, defendant was charged via information with the two offenses described above. In count I, aggravated DUI (625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2020)), the State alleged that defendant drove or was in actual physical control of a vehicle in the State of Illinois while under the influence of alcohol during a period of time in which his driving license was suspended. In count II, the State alleged that defendant knowingly resisted his arrest by Brandon Boyd and/or Callie Worsford, an authorized act within their official capacity (720 ILCS 5/31-1(a) (West 2020)). Specifically, the State alleged that defendant, knowing Boyd and Worsford "to be peace officers engaged in the execution of their official duties," pulled away from them "and/or moved his arms and hands toward his chest while being placed under arrest."

¶ 6                    B. Defendant's Representation by Counsel

¶ 7    The trial court appointed the public defender to represent defendant. Lance Camp, as the public defender of Henry County, assigned Clark Miljush to the case. Miljush represented defendant through various stages of the pretrial proceedings, including, among other things, helping him file a waiver of his right to a jury trial. Defendant provided his wet signature on the jury trial waiver form and dated it April 18, 2022, the day of a pretrial proceeding in open court he attended with Miljush. The waiver explains what a jury trial is and indicates that defendant was knowingly and voluntarily giving up his right to a jury trial.

¶ 8    In a subsequent pretrial conference, the State offered defendant a plea agreement, which called for a sentence at the statutory minimum term, which Miljush described as a 30-day sentence (effectively 15 days after application of day-for-day credit). Defendant ultimately went against Miljush's recommendation and rejected the proposed plea agreement.

¶ 9    When Miljush's contract with the county came to an end, Camp assigned Emily Knox (now known as Emily Hepner) to the case in April 2023. She reviewed the discovery,

discussed it with defendant, and represented him at pretrial conferences. During a pretrial conference in May 2023, the jury trial waiver was addressed in open court. Hepner indicated the waiver was valid; defendant was present and did not object. When the trial court specifically asked defendant about proceeding with the bench trial, he agreed and lodged no objection. During another pretrial conference in July 2023, Hepner again told the court in front of defendant that a jury trial was waived, and again he lodged no objection.

¶ 10　　　　　Prior to the case going to trial, defendant filed a motion to dismiss alleging ineffective assistance of counsel and stating the following:

> "Legal counsel required to be effective. Example one Clark being present in the county violating due process, refused request for any type of defensive motions. Example two Emily has argued everything I ask to the simplist definition of words, to not knowing what kind of trial it is that was addressed in court [] malicious prosecution, the state's attorney and its office was well aware of the ticket issued violating due process thru the sworn report and warning to motorist. State's attorney persist in charges with inaccurate information."

The other issues raised in the motion to dismiss did not reference ineffective assistance of counsel or any attorney by name. These allegations pertained to violations of the State's subpoena power; double jeopardy; malicious prosecution; fifth Amendment (U.S. Const., amend. V) violations for depriving defendant of property without just compensation; and insufficient, inaccurate, and inadmissible evidence.

¶ 11　　　　　　　　　　　　　　C. The Bench Trial

¶ 12　　　　　A one-day bench trial was held in September 2023. Hepner indicated that she did not wish to proceed on defendant's *pro se* motion to dismiss, and the trial court struck it. The court

then heard testimony from Officer Boyd and considered the two exhibits entered into evidence: the dash-camera footage portraying defendant's driving, traffic stop, and arrest and his certified driving abstract showing his license suspension.

¶ 13 The video evidence shows that at approximately 12:30 a.m. on March 19, 2021, defendant was driving a silver Ford Focus eastbound on Interstate 80. Boyd approached defendant's vehicle from behind and used radar to clock his speed at approximately 39 miles per hour, which was below the minimum speed limit of 45 miles per hour. Defendant's vehicle was traveling in the right-hand lane, and it appeared to move toward the center line just as a semitruck was passing in the left lane, at which time the truck's brake lights illuminated. Moments later, defendant's vehicle drifted right, crossed the fog line on the side of the road, then drifted back toward the center line again; defendant's brake lights were illuminated during these movements. Boyd then activated his vehicle's emergency lights to pull over defendant's vehicle, at which time defendant used his left-hand turn signal and approached the center line to cross into the left lane just as another semitruck passed by. Seemingly reacting to the semitruck's presence, defendant suddenly switched to using his right-hand turn signal, drifted rightward onto the shoulder of the road, and came to a stop.

¶ 14 During the traffic stop, Boyd was wearing an N95 mask but still was still able to detect a strong odor of alcohol on defendant's breath. He testified that defendant's speech was "slurry" and "thick-tongued." When asked for his insurance and license, defendant provided the former but not the latter. Boyd ran a search on the vehicle's registered owner, leading to the discovery defendant's license was under a statutory summary suspension. Boyd returned to defendant's vehicle, asked him to step out, walked him over to the police vehicle, and requested his wallet. Upon conducting his own search of defendant's wallet, Boyd located the driver's license

- 4 -

defendant was unable to locate moments prior. While outside of the police vehicle, defendant asked about a symbolic reference to a religious cult and indicated that he was "intentionally baiting" Boyd. He also refused to take a field sobriety test.

¶ 15        Boyd formed the opinion that defendant was under the influence of alcohol and began to arrest him with the assistance of Officer Worsford. As the officers attempted to place defendant's arms behind his back, he repeatedly pulled his arms away. The officers gave numerous commands to defendant to place his hands behind his back and stop resisting arrest, but he continued to pull his arms away from the officers. They moved him to the right-hand side of the police vehicle, and Boyd performed a leg sweep and arm bar to effectuate the arrest.

¶ 16        The officers completed the arrest and issued a *Miranda* warning to defendant (see *Miranda v. Arizona*, 384 U.S. 436 (1966)). They then transported him to the hospital in an emergency services vehicle for treatment of his right hand, which had a laceration and a broken bone. In the emergency services vehicle, defendant told Boyd that he was trying to get to East Moline, Illinois, when he was apprehended. Boyd, who again observed the odor of alcohol on defendant's breath, read him the "warning to motorist" concerning the consequences of refusing alcohol testing. Once at the emergency room, Boyd provided defendant with an opportunity to produce a blood and urine sample for testing. While defendant initially agreed, he changed his mind as the phlebotomist was about to draw blood. While the hospital did ultimately determine defendant's blood alcohol content, the trial court ruled that medical records reflecting this information were inadmissible.

¶ 17        The defense challenged the DUI charge on a number of factual bases. It argued that the road was not well lit, other vehicles were allegedly traveling at around 45 miles per hour, and the dash-camera footage did not show any traffic in defendant's lane. Boyd did not ask defendant

why he was driving slowly, such as for medical emergency reasons, nor did he indicate what type of alcoholic beverage he smelled on defendant's breath. Defendant contended that the dash-camera footage did not show his speech was slurred, and it was reasonable for him to say he was in the Quad Cities when he was on a major highway approximately 10 to 15 miles from that area. The defense also noted that defendant said he was intentionally baiting Boyd. As for the charge of resisting arrest, the defense argued that defendant instinctively pulled away because he had a broken hand and did not have enough time to process the commands. With respect to the part of the DUI charge based on his license being suspended, the defense argued, without citing any facts, that the State did not meet its burden.

¶ 18　　　　At the close of evidence, the trial court found that Boyd testified credibly. The court also found that defendant's license was under a statutory summary suspension at the time. Based on the totality of the evidence, the court found that defendant was driving under the influence and resisted the officers during the arrest by pulling his arm away multiple times. The court convicted defendant on both counts and continued the matter for sentencing.

¶ 19　　　　　　　D. Posttrial Claims of Ineffective Assistance of Counsel

¶ 20　　　　After the trial, defendant filed a document he captioned "Letter of Insight" (letter) and a motion to vacate. The letter made a few specific references to counsel by name, or to ineffectiveness of counsel, as follows: "Due to the appointed counsel and members of the circket [*sic*] clerk's office in violation of Illinois state constitution article I section 4 [Ill. Const. 1970, art. I, § 4)], Camp is or should be in possession of documents rendering the court orders void"; "[an] honorable defense motion is with this in example of how the counsel is ineffective"; "[w]ith the dates involved is camp authorized?"; and "[n]ow for the serious question, if Camp and various members of this court (Henry County) are not beneficiaries of prostitution, human trafficking or

drug smuggling/dealing why illegally intercept and refuse requests for admissions of documents containing proof of these actions?"

¶ 21    The other allegations in the letter and motion to vacate are stated separately and do not reference counsel or the concept of ineffective assistance of counsel. These allegations relate to a falsified traffic stop; a methamphetamine conspiracy; fraud upon the court; a petition for judicial review not being heard; use of falsified medical records in violation of the Health Insurance Portability and Accountability Act (42 U.S.C. § 1320d *et seq.* (2018)); reliance on laws repugnant to the constitution; and other constitutional concerns, such as due process violations and reliance on laws that are allegedly void for vagueness.

¶ 22                    E. The Sentencing Hearing

¶ 23    The trial court had provided defendant with the date and time of his sentencing, and on at least two occasions, it warned him that he would give up important rights by not attending. Specifically, the earlier of the two warnings stated, in writing and orally, as follows:

> "[T]he Court could sentence you in your absence, and you'd be giving up those exact same rights for the sentencing hearing: The right to be present to see it happen, the right to assist your attorney in defending you, and the right to make a statement in your own defense."

In both instances of receiving the warning in open court, defendant stated that he understood.

¶ 24    In preparation for sentencing, defendant met with Camp on at least one occasion and did not indicate that he sought to remove the public defender's office as counsel or represent himself *pro se*. Once the presentence investigation report was issued, defendant did not meet with his counsel at the scheduled time on the day before sentencing. He otherwise did not cooperate in the presentence investigation. At sentencing, Camp appeared and sought a continuance due to

defendant's absence. The court denied this motion and sentenced defendant to 18 months in prison and 364 days in jail, with the latter being merged into the former.

¶ 25                                F. The Preliminary *Krankel* Hearing

¶ 26        Shortly after defendant was sentenced, he appealed his convictions, arguing, among other things, that the trial court failed to conduct a preliminary *Krankel* hearing on his claims of ineffective assistance of counsel. The State conceded error, and we remanded for a *Krankel* hearing while retaining jurisdiction over the appeal. *People v. Robinson*, No. 4-23-1349 (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 27        On remand, the trial court issued a notice of a preliminary *Krankel* inquiry to be conducted in April 2025. Defendant appeared for this hearing, as did all three former attorneys: Miljush (pretrial counsel), Hepner (trial counsel), and Camp (the Henry County public defender who originally assigned Miljush and Hepner to the case and who served as counsel at the sentencing phase). During the hearing, the same judge who presided over defendant's trial and sentencing conducted the *Krankel* inquiry. The court indicated that it usually conducts this inquiry at sentencing, but that it could not have done so here since defendant did not attend sentencing. During the hearing, the following exchange occurred regarding the claims generally, including the alleged due process violation and other constitutional violations.

"THE COURT: So, [defendant], in that letter, in that motion, I guess, you made some various claims about ineffective assistance of counsel.

Can you just explain what you believe those errors were?

[DEFENDANT]: Primarily just outright denying the constitution, not doing any type of investigation into any of my claims. Miljush being present while—in the first county. The first trial was not going to take place before the second trial,

and I was punished civilly in this court before the first one for the second one.

THE COURT: Okay. And you say there were—was a first trial and a second trial. I guess—and you said "punished civilly.'

Do you mean a statutory summary suspension proceeding?

[DEFENDANT]: No. There's an actual civil court that took place with forfeiture—

THE COURT: A forfeiture proceeding?

[DEFENDANT]: Yeah. So you're going to use the same evidence in civil and go against me. There's no—nothing was done about that.

THE COURT: Okay. So there was a forfeiture proceeding and then the criminal trial.

And you said 'by denying the constitution.' What exactly do you mean by that?

[DEFENDANT]: Due process.

THE COURT: Specifically, is there some type of due process issue that you can point to?

[DEFENDANT]: I'm being put on trial for the second one before the first one.

THE COURT: Okay. Is there anything else you'd like me to know?

[DEFENDANT]: Most of it was written down so far.

THE COURT: I'm sorry? I couldn't hear what you said.

[DEFENDANT]: Most of it was written down so far.

THE COURT: Okay.

[DEFENDANT]: Showed up in the—what do they call that? —the transcripts. They said stuff from here and the appeal court."

¶ 28 Next, the trial court inquired about defendant's claims pertaining to documents in counsel's possession. Defendant briefly explained that "[t]hose [documents] would have been the request for admissions to make genuine facts about the due process and some of the stuff leading up to it."

¶ 29 Subsequently, in a back-and-forth with defendant, the trial court asked about the claims pertaining to collusion and conspiracies. Defendant stated the same people handling a "cocaine bust" were handling his case, and he made allegations about "drug use between judges, bar affiliations, investments in brewing *** companies"' and "the same judges in both counties violating due process in the courts and the NCIC reports, nothing getting expunged properly, sharing it with other states." He then asked, "Did they ever actually find out if Boyd is officially working in Scott County?" In a later part of the hearing, defendant revisited his allegations of a conspiracy, stating that his court filings were never docketed, including one stating "that they were going to treat as a jury trial when it wasn't a jury trial, and [he] was misrepresented by Clark." Defendant and the court agreed that the pretrial motion to dismiss was filed, but defendant stated as follows regarding his posttrial filings: "Then I tried to come in after the trial with the paperwork that they're just sweeping under the rug, in which case the clerk conspired with Lance about whether or not she was going to file it or not."

¶ 30 After the back-and-forth with defendant, the trial court asked counsel directly about these claims. Hepner indicated she spoke with defendant about his concerns and explained the license suspension procedure, as well as his options if he thought there was police misconduct. Hepner indicated she did not believe these claims to have merit, nor those regarding human

trafficking, drug smuggling, prostitution, and documents in the defense's possession that would allegedly affect the case. Camp agreed with these assessments.

¶ 31        Before concluding the hearing, the trial court addressed defendant's concerns regarding his counsel not adopting his motions and explained the process of a *Krankel* hearing. The court then concluded that the claims had no merit. Defendant tried to continue making his argument with respect to freedom of speech and conspiracies involving brewing companies, but the court interjected and ended the hearing.

¶ 32        This appeal followed.

¶ 33                                  II. ANALYSIS

¶ 34        On appeal, defendant argues the trial court erred by failing, during the required inquiry pursuant to *Krankel*, to ascertain the factual basis for, and make an adequate record of, all his *pro se* claims of ineffective assistance of counsel.

¶ 35        *Krankel* and its progeny establish the procedures a trial court must follow when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel. *Krankel*, 102 Ill. 2d at 189. These procedures serve " 'the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims,' 'to promote consideration of *pro se* ineffective assistance claims in the trial court,' and 'to limit issues on appeal.' " *People v. Jackson*, 2020 IL 124112, ¶ 95 (quoting *People v. Patrick*, 2011 IL 111666, ¶¶ 39, 41).

¶ 36        "A *Krankel* inquiry proceeds in two stages." *People v. Palomera*, 2022 IL App (2d) 200631, ¶ 56. The first stage requires the trial court to conduct a preliminary inquiry into the factual basis of the claim. *Id.* (citing *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 43). If the allegations show "possible neglect" of the case on the part of counsel, the court moves to the second stage,

where it conducts "an adversarial and evidentiary hearing on the defendant's claims, and during this hearing the defendant is represented by *Krankel* counsel." *Downs*, 2017 IL App (2d) 121156-C, ¶ 43.

¶ 37                              A. Scope of the *Krankel* Inquiry

¶ 38          *Krankel* inquiries are appropriate only for claims that expressly allege ineffective assistance of counsel. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 26 ("In instances where the defendant's claim [of ineffective assistance of counsel] is implicit and could be subject to different interpretations, a *Krankel* inquiry is not required."); see *People v. Cook*, 2023 IL App (4th) 210621, ¶¶ 67-68. "Whether the allegations of ineffective assistance of counsel are sufficient to trigger a trial court's duty to conduct a *Krankel* inquiry is a question of law subject to *de novo* review." *Cook*, 2023 IL App (4th) 210621, ¶ 64. Moreover, while some courts have required the consideration of claims in pretrial motions (*People v. Washington*, 2012 IL App (2d) 101287, ¶ 22), the Illinois Supreme Court has since indicated that issues raised prior to trial do not require a *Krankel* inquiry, and this district has followed this approach. See *People v. Ayres*, 2017 IL 120071, ¶ 22 ("*Krankel* is limited to posttrial motions."). However, clear ineffective assistance claims raised posttrial generally trigger an inquiry. See *People v. Jocko*, 239 Ill. 2d 87, 93 (2010); *Cook*, 2023 IL App (4th) 210621, ¶ 62.

¶ 39          Here, only one paragraph of the motion to dismiss made any reference to counsel or ineffective assistance of counsel. In any case, the motion was filed before trial, so it would not necessarily trigger a *Krankel* inquiry. Defendant argues that the trial court should have considered the entire motion to dismiss because he mentioned it during the hearing. We disagree. Even when expressed orally, the claim of ineffective assistance of counsel must be made clearly. See *Cook*, 2023 IL App (4th) 210621, ¶¶ 61-68. Defendant failed to do so here. During the hearing, he merely

stated in passing that he had filed a pretrial motion to dismiss, seemingly in support of his argument that his counsel was ineffective for failing to adopt his earlier *pro se* filings and for conspiring with the clerk to not file posttrial documents. But defendant did not mention the motion to dismiss in reference to the *merits* of its arguments, and he did not suggest he was generally renewing the arguments in the motion.

¶ 40　　　　Furthermore, many of the arguments in the posttrial letter and motion to vacate do not expressly pertain to ineffective assistance of counsel. Defendant argues that everything in the letter or the motion to vacate is part of the ineffective assistance of counsel claim because of a sentence stating as follows: "A honorable defense motion is with this in example of how the counsel is ineffective." However, this sentence is unclear. See *People v. Taylor*, 237 Ill. 2d 68, 77 (2010) (holding a rambling statement did not require inquiry where the statement was "amenable to more than one interpretation"). We understand this sentence in the letter as referring to counsel not adopting the letter and motion and requiring defendant to file it *pro se*, which is consistent with defendant's argument at the hearing that his counsel was ineffective for refusing to endorse his *pro se* filings. Moreover, these claims defendant seeks to incorporate by reference are largely frivolous, redundant, and obscure comments that do not make a clear claim of ineffective assistance. See *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 30.

¶ 41　　　　Overall, the only contentions at issue here are those that expressly set forth an ineffective assistance of counsel claim in the posttrial filings or at the preliminary *Krankel* hearing, namely, the alleged failure to challenge the basis of the driving abstract; to use documents to uncover constitutional violations and vacate the convictions; to challenge constitutional violations, including those pertaining to due process and freedom of speech; to challenge the admissibility of evidence; to inform defendant of the jury trial waiver; to have authority to represent him; and to

investigate the claims and adopt his filings.

¶ 42                                    B. Sufficiency of the *Krankel* Inquiry

¶ 43          Having identified the claims properly subject to examination under *Krankel*, we now analyze whether the "trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). This is a legal question we review *de novo*. *People v. Roddis*, 2020 IL 124352, ¶ 33. A reviewing court should consider three factors when determining whether a preliminary *Krankel* inquiry was sufficient: (1) whether there was some interchange between the trial court and defense counsel regarding the facts and circumstances surrounding the allegedly ineffective representation, (2) the sufficiency of the defendant's *pro se* allegations of ineffective assistance, and (3) the trial court's knowledge of defense counsel's performance at trial and the sufficiency of the defendant's allegations on their face. *Moore*, 207 Ill. 2d at 78-79. "None of these factors are mandatory, and no bright-line rule exists about what is a sufficient inquiry and what is not." *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 71. The Illinois Supreme Court has specifically used permissive rather than mandatory language in describing the utilization of these factors. See *People v. Jolly*, 2014 IL 117142, ¶ 30.

¶ 44          If the trial court has properly conducted the *Krankel* hearing, we then review the court's ruling that a defendant's claim is meritless. Courts have found claims meritless that are conclusory, misleading, or legally immaterial or pertain solely to an issue of trial strategy (*Roddis*, 2020 IL 124352, ¶ 63), but, ultimately, a reviewing court will "adhere to a case-by-case, fact-specific examination, driven by the record." *Id.* ¶ 64. We note that "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013

IL 113688, ¶ 36. "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). We analyze this issue for manifest error. *People v. Lawson*, 2019 IL App (4th) 180452, ¶ 43. "Manifest error is error that is clearly evident, plain, and indisputable." *Jackson*, 2020 IL 124112, ¶ 98; see also *Lawson*, 2019 IL App (4th) 180452, ¶ 43 (citing *People v. Coleman*, 2013 IL 113307, ¶ 98).

¶ 45        Here, regarding the alleged failure to challenge the basis of the driving abstract, defendant specifically argues that his license suspension was based on a falsified traffic stop, which would not be evident from the driving abstract itself; thus, he argues that the trial court should have looked beyond the present record and inquired further. However, the recission of a statutory summary suspension operates only prospectively, so a conviction for driving during the period of suspension remains valid. *People v. Elliott*, 2014 IL 115308, ¶ 21. Furthermore, for an aggravated DUI offense, a prior conviction, license suspension, or license revocation does not need to be proven beyond a reasonable doubt. *People v. English*, 2023 IL App (4th) 220296-U, ¶¶ 15, 17; *People v. Watson*, 322 Ill. App. 3d 164, 167 (2001). "For any prosecution under this Section, a certified copy of the driving abstract of the defendant shall be admitted as proof of any prior conviction." 625 ILCS 5/11-501(h) (West 2020). Here, the court properly relied on the certified driving abstract showing the summary suspension, and defendant's complaints are legally immaterial. There is nothing further about which the court needed to inquire regarding the license suspension to determine that the claim was meritless.

¶ 46        Next, regarding the alleged failure to use documents to uncover constitutional violations and void the convictions, defendant states that the documents in question are requests

- 15 -

for an admission about prostitution, human trafficking, and drug trafficking. An allegation is conclusory when a defendant cannot add additional facts to support his bare allegation of ineffective assistance of counsel. See *People v. Towns*, 174 Ill. 2d 453, 467 (1996). When given the opportunity to elaborate, defendant provided various non sequiturs: "It's the same people doing that that are handling mine," and, "So if they would be involved in that stuff, how much are they really doing? To be any drug use between judges, bar affiliations, investments in brewing *** companies." Defendant provided no facts to give any discernable form to this alleged conspiracy. He also alleged no facts showing how such a conspiracy would impact the altogether different matter of his convictions for an aggravated DUI with a suspended license and resisting arrest, of which there was ample supporting evidence. The trial court's inquiry was sufficient, and it was not manifest error for the court to find these claims meritless.

¶ 47    Additionally, defendant argues that Camp and the trial court violated "Illinois state constitution article 1 section 4 [(Ill. Const. 1970, art. I, § 4)]," which pertains to freedom of speech. Defendant explained that this allegation was about his requests for admissions regarding due process and "some of the stuff leading up to it." The court asked defendant about his claims regarding "denying the constitution" and asked whether he had anything else to tell the court, to which he twice responded, "Most of it was written down so far." Putting aside the fact that a request for admission is a discovery tool utilized only in civil cases (Ill. S. Ct. Rule 216(a) (eff. July 1, 2014)), the written record includes not a single fact that would support a freedom of speech or due process claim, and defendant has articulated none, despite having had numerous opportunities to do so. This renders any such claim factually baseless. The issue is also legally immaterial. Defendant's conviction under count I pertained to an aggravated DUI based in part on his well-documented erratic driving, slurred speech, and smell of alcohol. Further, his conviction

under count II is based on dash-camera footage that clearly shows him trying to avoid being handcuffed for at least 45 seconds. The claim would not meet either prong of *Strickland*. See *Roddis*, 2020 IL 124352, ¶ 45 (finding no merit to claim when proffered evidence "would not alter the *** verdict of guilty in this particular case, because the evidence was overwhelming in this particular case" (Internal quotation marks omitted)) (quoting *People v. Chapman*, 194 Ill. 2d 186, 229 (2000)).

¶ 48    Defendant also argued that the evidence used in a forfeiture proceeding was improperly used here and certain criminal records should have been expunged but were not. But these allegations are baseless and legally immaterial as well. A civil forfeiture proceeding is consistent with a criminal conviction. See, *e.g.*, *People ex rel. Nerheim v. 2005 Black Chevrolet Corvette*, 2015 IL App (2d) 131267, ¶ 21 (a forfeiture "proceeding *in rem* stands independently of, and wholly unaffected by, any criminal proceeding *in personam*"). In any case, the evidence used here included in-court testimony, dash-camera footage, and a driving abstract, all of which are generally admissible. Further, defendant's comments concerning nothing being expunged properly were mentioned in reference to the allegations of a conspiracy amongst "judges, bar affiliations, investments in brewing *** companies." However, defendant's comments are pointed at an alleged failure of a *court* to expunge his convictions in other cases. As this contention is not clearly about his counsel's effectiveness, or even this case, we need not discuss it further.

¶ 49    In addition, defendant argued that his counsel was ineffective for not informing him of the nature of the bench trial. During the hearing, defendant stated, "[T]hey were going to treat as a jury trial when it wasn't a jury trial." Our supreme court has stated as follows on the issue of jury waivers: "Recognizing that the accused typically speaks and acts through his attorney, we have given effect to jury waivers made by defense counsel in defendant's presence where

- 17 -

defendant gave no indication of any objection to the court hearing the case." *People v. Frey*, 103 Ill. 2d. 327, 332 (1984). Furthermore:

"In *Murrell* [60 Ill. 2d 287, 290 (1975)] and *Sailor* [43 Ill. 2d 256, 260 (1969)] for instance, defense counsel's single statement that defendant was waiving a jury was held to constitute a valid waiver since defendant was present in the courtroom and failed to object. We have not required that the record affirmatively establish that the court advised defendant of his right to a jury trial and elicited his waiver of that right (*Murrell*), nor that the court or counsel advised defendant of the consequences of the waiver." *Id.*

¶ 50          Here, the record shows that defendant provided his wet signature on a written jury trial waiver on the same day of an open court proceeding he attended with his attorney. The waiver has the case number, explains what a jury trial is, and indicates that defendant is knowingly and voluntarily giving up his right to a jury trial. During a subsequent pretrial conference, the waiver was addressed in open court. Defendant heard his attorney say that the jury waiver was valid, and he did not object. When the trial court asked defendant about proceeding with the bench trial, he agreed and lodged no objection. At the final pretrial conference, defendant's counsel again told the court in defendant's presence of the jury trial waiver, and defendant again lodged no objection. Under these facts, *Frey* is controlling. While defendant argues that *People v. Scott*, 186 Ill. 2d 283, 285 (1999), applies, we disagree. *Scott* pertained to an inapposite situation, in which the defendant was never present while the jury waiver was discussed in open court prior to trial. *Id.* The court here was not obligated to inquire further, and its ruling that the claim was meritless is not manifestly erroneous.

¶ 51          Next, defendant argues that Camp was ineffective for not being "authorized." The

record rebuts this claim. We take judicial notice of the Attorney Registration and Disciplinary Commission records, which indicate Camp has been authorized to practice law in Illinois since 2010. See *People v. Johnson*, 2021 IL 125738, ¶ 54 (taking judicial notice of a public record). Defendant never filed a motion or letter before sentencing indicating he intended to proceed *pro se*, and his failure to attend the sentencing hearing suggests he did not intend to represent himself there. At sentencing, Camp—who was still defendant's appointed attorney under a duty to represent him—appeared on his behalf and unsuccessfully sought a continuance due to his absence. This record rebuts the assertion that Camp was not "authorized" as counsel.

¶ 52          As for defendant's claims about his counsel conducting inadequate investigations and not adopting his filings, Miljush and/or Hepner met with defendant multiple times for discovery purposes, helped him with a plea agreement, and made numerous substantive arguments at trial on his behalf. Furthermore, the trial court asked counsel, multiple times and at various stages, whether any of defendant's claims had merit; both Hepner and Camp responded in the negative, including as to claims pertaining to counsel other than themselves. Based on our own analysis of claims in the posttrial motion, we agree, and we note that counsel disagreeing with defendant does not constitute ineffective assistance of counsel. See *People v. Brandon*, 157 Ill. App. 3d 835, 846 (1987) (disagreeing about tactics and strategies is not sufficient to bring that forward as an allegation of ineffective assistance of counsel). Notably, the same judge presided over the pretrial proceedings, trial, sentencing, and preliminary *Krankel* hearing, so he was in the best position to analyze counsel's performance firsthand based on the entire record. In addition to probing counsel as to their opinions about the claims, the court conducted its own review of the factual basis underlying the claims of ineffective assistance of counsel. On this record, the inquiry into these claims was adequate, and it was not manifest error to deem them meritless.

¶ 53    Finally, defendant argues that the preliminary *Krankel* inquiry was inadequate because the trial court cut him off near the end of the hearing. But defendant was merely rehashing the same vaguely stated constitutional concerns the court had already addressed. Specifically, the court had already given defendant an opportunity to describe the extent of his claims, which he said mainly pertained to outright denying the constitution and not investigating his claims, which were mostly in his written filings and transcripts already. The court sufficiently inquired into those issues, as delineated by the foregoing analysis, before finding that they lacked merit, such that *People v. Morgan*, 2017 IL App (2d) 150463, and *People v. Mourning*, 2016 IL App (4th) 140270, which defendant cites, are distinguishable. Indeed, while a court should exercise caution when cutting off a defendant who is speaking during a *Krankel* inquiry, every hearing must have its end. A defendant must be given the opportunity to state his claims but not to state those claims repetitively. Furthermore, even if it were error to cut defendant off, we would find any error here to be harmless. See *People v. Justice*, 2023 IL App (4th) 230068-U, ¶ 36 (citing *Palomera*, 2022 IL App (2d) 200631, ¶ 63) ("Even if defendant was entitled to a *Krankel* inquiry, the circuit court's failure to conduct a preliminary *Krankel* inquiry was harmless error."); see also *People v. Burks*, 343 Ill. App. 3d 765, 773-77 (2003) (affirming despite no *Krankel* inquiry at all when allegations were conclusory and without merit).

¶ 54                          III. CONCLUSION

¶ 55    For the reasons stated, we affirm the trial court's judgment.

¶ 56    Affirmed.